

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00330-CR

The **STATE** of Texas,
Appellant

v.

Jose Angel **FLORES**, Jr.,
Appellee

From the County Court at Law No 2, Guadalupe County, Texas
Trial Court No. CCL-10-0869
Honorable Frank Follis, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  December 5, 2012

REVERSED AND REMANDED

At issue in this appeal is whether the trial court erred in finding that the information received by the officer at the time of Appellant Jose Angel Flores, Jr.'s arrest was unreliable pursuant to section 724.012(b)(3)(B) of the Texas Transportation Code. Because we hold the trial court erred in making such a finding, we reverse the trial court's order granting Flores's motion to suppress and remand for further proceedings consistent with this opinion.

## BACKGROUND

After being charged in county court with driving while intoxicated, Flores filed a motion to suppress evidence. At the suppression hearing, Deputy Robert Williams, the arresting officer, was the only witness to testify. Deputy Williams testified that on November 3, 2009, at about 8:00 p.m., he was informed by dispatch that a truck driver had called 911 and reported that another truck driver, driving a white 18-wheeler semi-cab with a flatbed trailer and Tennessee plates, was driving recklessly on IH-10. The dispatcher said that the 911 caller had spoken to the reckless truck driver, who had slurred speech and sounded intoxicated. According to Deputy Williams, he was told by dispatch that the caller was following the reckless truck driver and that the caller had his flashing lights on so that the proper authorities could identify the trucks. Because Deputy Williams was ahead of the trucks, he stopped his patrol car and waited for the trucks to appear. Deputy Williams testified that when he saw the trucks, he personally observed traffic violations. The driver of the white 18-wheeler was driving on the improved shoulder. Deputy Williams also saw the driver of the white 18-wheeler drive between the right lane and the center lane. Deputy Williams then pulled the white 18-wheeler over. Deputy Williams identified the driver of the white 18-wheeler as the defendant, Jose Flores.

Deputy Williams testified that when he came into contact with Flores, he smelled alcohol and saw that Flores held a beer in his hand. According to Deputy Williams, Flores's speech was slurred. Flores refused the field sobriety tests and said that he had had two beers. Deputy Williams placed Flores under arrest. He asked Flores if he would provide a breath specimen, and Flores refused. As Deputy Williams was en route to the jail, he called dispatch and asked them to run a background check on Flores. Deputy Williams testified that dispatch informed him that Flores had two prior convictions for DWI. Deputy Williams then took Flores to the medical center so that a mandatory blood sample could be taken from Flores.

Deputy Williams testified that when a dispatcher relays information about a suspect's criminal history, the dispatcher gets that information from the NCIC/TCIC database. According to Deputy Williams, the information in the NCIC/TCIC database is very reliable. And, Deputy Williams testified that the dispatchers, themselves, are credible sources of information. According to Deputy Williams, anyone who deliberately entered false information into the NCIC/TCIC database would be committing a crime. However, Deputy Williams admitted that like any other source of information, the NCIC/TCIC database is not 100 percent accurate without exception. Deputy Williams also testified that at the time of Flores's arrest, he believed the information he received was reliable information from a credible source. He subsequently learned that Flores did not have two prior convictions for DWI.

On cross-examination, Deputy Williams admitted that Jose Flores is a common name. Defense attorney then presented Deputy Williams with a hypothetical:

> Let's say you stopped somebody for speeding on the side of the road and it turns out that dispatch is telling you that and this person has a common name, dispatch is telling you this person has a warrant out for them. Is it common law enforcement practice to then follow up once that person is brought to the jail to verify that that is indeed the right person who is wanted in the arrest warrant?

Deputy Williams replied,

> In my past experience if, like we don't have a driver's license number or an I.D. number, we can use descriptive information, tattoos, size, build, just other information like that as well to investigate what's going on.

When asked if there was somebody at the jail or at the sheriff's office who could have printed out a background criminal check on Flores, Deputy Williams replied that there was someone, but that it was procedure to go through the dispatchers.

After hearing the testimony, the trial court granted Flores's motion to suppress. In granting the motion, the trial court made the following findings of fact:

1. Deputy Robert Williams was a certified peace officer on November 3, 2009.

2. Deputy Williams was dispatched regarding a reckless driver on Interstate Highway 10 in Guadalupe County, Texas.

3. Deputy Williams initiated a traffic stop on the driver, Jose Angel Flores, Jr., for driving on the improved shoulder of the highway and for failing to safely maintain his lane of traffic.

4. Upon making contact with Mr. Flores, Deputy Williams detected a strong smell of alcohol from Mr. Flores; he observed Mr. Flores with an open can of beer inside the vehicle; and he noticed Mr. Flores had slurred speech.

5. Deputy Williams arrested Mr. Flores for driving while intoxicated.

6. Deputy Williams was informed by the Guadalupe County Sheriff's Office dispatcher that Mr. Flores had two previous convictions for driving while intoxicated. Without obtaining a search warrant, Deputy Williams executed a mandatory blood draw on Mr. Flores pursuant to section 724.012 of the Texas Transportation Code.

7. Mr. Flores does not have two previous convictions for driving while intoxicated.

8. Deputy Williams acted in good faith in executing a blood draw on Mr. Flores at the time of the arrest.

The trial court also made the following conclusions of law:

1. Deputy Williams had reasonable suspicion to detain Mr. Flores for the observed traffic violations.

2. Deputy Williams had probable cause to arrest Mr. Flores for driving while intoxicated.

3. The State failed to produce evidence that, at the time of the arrest, Mr. Flores had two prior convictions for driving while intoxicated as required under section 724.012(b)(3)(B), and the State failed to produce a search warrant for Mr. Flores's blood.

4. The blood evidence obtained from Mr. Flores should be and is hereby suppressed under article 38.23 of the Texas Code of Criminal Procedure.

After reviewing these findings, we determined that critical findings pursuant to section 724.012(b)(3)(B) were missing. Thus, we remanded this case pursuant to *State v. Elias*, 339 S.W.3d 667, 676-77 (Tex. Crim. App. 2011), so that the trial court could make the critical findings. In our order, we explained that section 724.012(b)(3)(B) provides the following:

(a) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an

offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily: . . .

(3) *at the time of the arrest, the officer possesses or receives reliable information from a credible source* that the person: . . .

    (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [Driving While Intoxicated] . . . ."

TEX. TRANSP. CODE ANN. §724.012(b)(3)(B) (West 2011) (emphasis added). Thus, we concluded that under section 724.012(b)(3)(B), critical findings are (1) whether at the time of the arrest, the officer received *reliable information* and (2) whether the *source* of the information was *credible*. In looking at the trial court's findings of fact and conclusions of law, we noted that although the trial court made a finding that the dispatcher informed Deputy Williams that Mr. Flores had two previous convictions for driving while intoxicated, the trial court had made no finding as to whether at the time of the arrest this information was (1) reliable and (2) from a credible source. On remand, the trial court signed the following findings of fact:

- The Guadalupe County Sheriff's Office dispatcher is a credible source of criminal history information.

- Deputy Williams did not obtain a warrant issued by a neutral magistrate based on probable cause.

- In this case the information provided by the Guadalupe Sheriff's office dispatcher was not reliable.

The trial court also signed the following conclusions of law:

- In Texas, the good faith exception under article 38.23 of the Texas Code of Criminal Procedure applies only to evidence seized under a warrant issued by a neutral magistrate based on probable cause.

- If the State is allowed to depend on Deputy Williams's good faith belief that the dispatcher's information was reliable, then section 724.012(b)(3)(B) of the Texas Transportation Code is in conflict with article 38.23 of the Texas Code of Criminal Procedure.

The State then filed this interlocutory appeal of the trial court's order granting Flores's motion to suppress.

**MOTION TO SUPPRESS**

*A. Standard of Review*

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011). If the trial court, as here, makes findings of fact, we determine whether the evidence supports those findings. *Id.* We then review the trial court's legal rulings *de novo* unless the findings are dispositive. *Id.*

*B. Section 724.012(b)(3)(B) of the Texas Transportation Code*

The implied consent law, as codified in section 724.011 of the Transportation Code, "expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). "It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Id.* Pursuant to section 724.011, a person who has been arrested for the offense of operating a motor vehicle while intoxicated and in a public place is considered to have consented to submit to the taking of a breath or blood specimen for analysis to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance in the person's body. *See* TEX. TRANSP. CODE ANN. § 724.011 (West 2011); *Comperry v. State*, 375 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The person retains the right, subject to automatic suspension of his license, to refuse to give a specimen. TEX. TRANSP. CODE ANN. § 724.013 (West 2011). However, if the suspect refuses to provide a specimen voluntarily and the arresting officer, at the time of the arrest, possesses or receives reliable information from a credible source

that the person on two or more occasions has been previously convicted of or placed on community supervision for committing the offense of driving while intoxicated, then the officer "shall require the taking of a specimen of the person's breath or blood." *Id.* § 724.012(b)(3)(B). Here, Deputy Williams took Flores to the medical center for a mandatory blood draw pursuant to section 724.012(b)(3)(B) based on information he received from the dispatcher, who in turn retrieved the information from the NCIC/TCIC database. After hearing the evidence at the suppression hearing, the trial court found that the dispatcher was a credible source but that in this case, the information provided by the dispatcher was not reliable.

### C. *Burden of Proof at the Suppression Hearing*

At the suppression hearing, Flores argued that evidence related to the blood draw should be suppressed pursuant to article 38.23 of the Texas Code of Criminal Procedure because the State had violated section 724.012(b)(3)(B). On appeal, the State argues that there is no evidence to support the trial court's finding that the information received by Deputy Williams was not reliable under section 724.012(b)(3)(B). In considering this issue, we must first determine which party at the suppression hearing had the burden to show that the State violated section 724.012(b)(3)(B).

In *State v. Robinson*, 334 S.W.3d 776, 777 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals addressed the allocation of the burden of proof in a motion to suppress under article 38.23. The court held that "the defendant has the initial burden, which shifts to the State only when the defendant has produced evidence of a statutory violation." *Id.*

In *Robinson*, the defendant was arrested without a warrant for DWI. *Id.* He was transported to a hospital, where he consented to have his blood drawn. *Id.* When tests showed a blood alcohol concentration of 0.14%, the defendant filed a motion to suppress the results, arguing that his blood was drawn without a warrant and without consent, and that it was not

drawn by a qualified person, as required under section 724.017(a) of the Transportation Code. *Id.* at 777-78. The defendant argued that the results should be suppressed under both the Fourth Amendment and article 38.23. *Id.* at 778. At the suppression hearing, the trial court told the defendant that because he had filed the motion, he should proceed first. *Id.* The State interrupted, agreeing to stipulate that the arrest was without a warrant and that because of the stipulation, the State should proceed first. *Id.* The State then called only one witness, the arresting officer. *Id.* The officer testified to the circumstances of the arrest, but could not remember the name of, nor could he describe, the person who drew the defendant's blood. *Id.* Based on the officer's testimony, the trial court suppressed the blood evidence, but not on Fourth Amendment grounds. *Id.* Instead, the trial court suppressed the evidence based on the fact that the State had not met the burden to prove that a qualified person performed the blood draw as required by section 724.017(a) of the Transportation Code. *Id.* The Tenth Court of Appeals affirmed, but Chief Justice Gray dissented, arguing that the court had erroneously placed the burden of proof on the State to prove statutory compliance. *Id.* The State then presented the Texas Court of Criminal Appeals with the following question:

> At a hearing on a motion to suppress blood evidence, once the defendant established that he was arrested for driving while intoxicated without a warrant, does the burden of proof shift to the State to prove that the blood draw was taken in accordance with statutory requirements?

*Id.* In its brief to the court of criminal appeals, the State argued that the trial court improperly shifted the burden of proof on the article 38.23 suppression issue. *Id.* According to the State, because the State stipulated only to the fact that the defendant was arrested without a warrant, it assumed the burden of proof only as to the warrantless arrest. *Id.* Thus, the State argued that because the defendant brought the motion to suppress, he retained the burden of proof to establish that the blood draw was not taken in accordance with statutory requirements. *Id.*

In deciding this issue, the court of criminal appeals noted that "a defendant who moves for suppression under article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation." *Id.* at 779. "Only when this burden is met does the State bear a burden to prove compliance." *Id.* "This procedure is substantially similar to that required when there is a motion to suppress under the Fourth Amendment, but it is a separate inquiry based on separate grounds." *Id.* The court then noted that in the case before it, the State had stipulated to the warrantless arrest of the defendant, thereby relieving the defendant from the burden of rebutting the presumption of proper police conduct in making the arrest. *Id.* The court of criminal appeals noted that while the trial court had found no grounds for suppression under the Fourth Amendment, it had found that the evidence did not prove that the blood sample was drawn by a qualified person pursuant to section 724.017(a). *Id.* The court of criminal appeals concluded that this finding by the trial court was incorrect "because even in the light most favorable to the ruling," the defendant "did not produce evidence of a statutory violation." *Id.* The court explained that the officer's testimony that he did not remember who drew the blood was not evidence of a statutory violation. *Id.* The court of criminal appeals emphasized that there was "no evidence that the person who drew the blood was not qualified." *Id.* And, because the defendant "never produced evidence of a statutory violation, the State never had the burden to prove that the blood sample was drawn by a qualified person." *Id.* Thus, the court concluded that the record demonstrated that "the trial court erroneously placed the burden of proving statutory compliance on the State." *Id.*

Judge Cochran joined this majority opinion, but also wrote separately to distinguish the shifting burdens at a suppression hearing from those shouldered by the proponent of the evidence at trial. *Id.* at 779 (Cochran, J., concurring). She explained that in a suppression hearing, the movant asserts "some sort of illegal conduct, perhaps a violation of the federal constitution or

perhaps a statutory violation." *Id.* "The law starts with the presumption of proper and lawful conduct." *Id.* "For example, it assumes that the police have acted in compliance with all constitutional and statutory requirements in making an arrest." *Id.* "The defendant bears the burden of producing evidence that shows that an arrest was illegally made, evidence was illegally obtained, and so forth." *Id.* at 779-80. "Once the defendant produces some evidence of impropriety or illegality, then the burden shifts to the State to rebut that showing." *Id.* at 780. "Normally, the burden of persuasion, as well as production, rests on the movant." *Id.* Thus, the movant must show that the normal and proper procedures were not followed in his case. *Id.* "However, with certain constitutional claims,[1] once the movant has produced some evidence to rebut the presumption of proper police conduct, the prosecution must not only rebut the movant's evidence, but shoulder the ultimate burden of persuasion." *Id.* Judge Cochran explained that in the instant case, the defendant could meet his initial burden of showing an illegal arrest under the Fourth Amendment by producing some evidence (1) that he was arrested, and (2) the police did not have a warrant. *Id.* Then, the burden would shift to the State to show either (1) the police did, in fact, obtain a warrant, or (2) the reasonableness of the warrantless search. *Id.* Judge Cochran noted that in the instant case, the State stipulated that this was a warrantless arrest, thus accepting the burdens of production and proof to show the reasonableness of the arrest. *Id.*

In addition to the constitutional claim under the Fourth Amendment, Judge Cochran explained that the defendant in the instant case had *also claimed a statutory violation* under the Transportation Code. *Id.* That is, the defendant had argued that the person who withdrew his blood specimen at the hospital was not a qualified technician under section 724.017(a). *Id.* Thus, the defendant had the burden to produce some affirmative evidence that the person who

---

[1] We note that Flores maintains he has not brought any constitutional claims. Flores states that he "never objected to the admission of the blood evidence on Fourth Amendment grounds." According to Flores, he sought suppression of the evidence based only on a violation of state law pursuant to Texas's exclusionary rule, article 38.23.

withdrew his blood was not qualified. *Id.* "If he made a *prima facie* showing that the person was not qualified, then the burden would shift to the State to rebut that showing." *Id.* Judge Cochran concluded that because the defendant did not make such a *prima facie* showing, "the burden never shifted to the State to rebut a *prima facie* showing of improper or unlawful conduct concerning the blood draw in the context of a motion to suppress." *Id.* at 782. Judge Cochran then addressed the defendant's argument that the State should have the burden to show compliance with the state statute concerning the blood draw. Judge Cochran explained that the State would have that burden – at trial. *Id.* "As the proponent of the evidence at trial, the State must fulfill all required evidentiary predicates and foundations." *Id.* "Thus, at trial, the State will be required to offer evidence that the blood was drawn by a qualified person before evidence of the blood, the blood test, and the blood test results are admissible." *Id.* "Its burden at trial is to establish the admissibility of its evidence by a preponderance of the evidence." *Id.* However, at a suppression hearing, "it is the burden of the movant (the person who opposed use of the evidence) to establish that the evidence should not be admitted because of unlawful conduct." *Id.*

Applying *Robinson* to our facts, at the suppression hearing, Flores had the burden to produce some affirmative evidence of a section 724.012(b)(3)(B) violation. That is, Flores had to make a *prima facie* showing that at the time of the arrest, Deputy Williams did not receive reliable information that Flores had been twice convicted of DWI. Only if Flores made this *prima facie* showing did the burden shift to the State to rebut that showing. Thus, the issue is whether Flores made such a *prima facie* showing.

Deputy Williams was the only witness to testify at the suppression hearing. As noted, Deputy Williams testified that while he was on the way to the jail with Flores, he called dispatch and "asked them to run a background check on that individual." And, "dispatch came back that the subject had two prior convictions for DWI." According to Deputy Williams, the information

relayed by dispatch came from the NCIC/TCIC database, and the NCIC/TCIC contains reliable information. Deputy Williams also testified that he later learned that the information from the NCIC/TCIC database was incorrect. In fact, Flores had not been convicted of DWI on two previous occasions. Flores contends that Deputy Williams's testimony that he later discovered the information to be untrue is *prima facie* evidence of a section 724.012(b)(3)(B) violation. According to Flores, "[i]nformation that is false is obviously not reliable." In contrast, the State argues that this testimony is not evidence of unreliability because information later determined to be inaccurate is not necessarily unreliable. We agree with the State that information can turn out to be false but still be considered reliable.

The terms "reliable information" and "credible source" are not defined in the Transportation Code. *See Comperry v. State*, 375 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Statutory terms not legislatively defined are generally construed as common usage allows, but terms that have acquired a known and established legal meaning are generally construed in their legal sense. *Id.*; *see also Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000). In considering this same issue, the Fourteenth Court of Appeals noted that "reliable" is defined in *Black's Law Dictionary* as "trustworthy" and "worthy of confidence." *Comperry*, 375 S.W.3d at 514 (quoting BLACK'S LAW DICTIONARY 1160 (5th ed. 1979)). The court noted that similarly, "credible" is defined in *Black's Law Dictionary* as "worthy of belief; entitled to credit." *Id.* The court also recognized that "reliable" and "credible" are often paired in the context of evaluating whether probable cause exists to conduct a search and seizure, or an arrest. *Id.* at 515. Thus, "[t]aking into account the consistency of the words 'reliable' and 'credible' as applied in legal contexts, and having reviewed the extensive use of the words together in the law of search and seizure," the court "concluded that these words have specific legal meanings that are closely related and intertwined." *Id.* at 516. The court presumed

"the Legislature also recognized that reliability and credibility are often intertwined in the realm of criminal law, and so when drafting section 724.012(b)(3) purposely prescribed the requirement of 'reliable information from a credible source' to reflect the commonly understood use of the words." *Id.*

We agree with the Fourteenth Court of Appeals in its interpretation of "reliable information from a credible source." "Reliable information" is information that is trustworthy or worthy of belief. That does not mean that the information must be infallible. That is, the mere fact that information about Flores contained within the NCIC/TCIC was later determined to be inaccurate does not mean that the information was unreliable. In so concluding, we do not mean to suggest that information contained in the NCIC/TCIC is per se reliable. Instead, a trial court must make the finding of reliability of the information based on the specific evidence presented. And, here, there was no evidence that the information received by Deputy Williams was not reliable at the time of the arrest.

Flores also claims that he made a *prima facie* showing that the information was unreliable because "the officer testified that he simply received information that [Flores] had two prior driving while intoxicated offenses showing up on his record." Flores argues that the "State offered no evidence that the officer had specific information such as when the cases occurred, or where or when they might have occurred." And, Flores emphasizes that "the officer agreed that [Flores] has a common name and could be confused with others with the same name." Flores also complains that the officer did not take "further steps" to try to corroborate the information he received. We disagree with Flores that he made his *prima facie* showing through Deputy Williams's testimony. Section 724.012(b)(3)(B) required Deputy Williams to take a person arrested for DWI for a mandatory blood draw if, at the time of the arrest, Deputy Williams received reliable information that the subject had been on two or more occasions previously

convicted of DWI. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). Deputy Williams clearly testified that he asked dispatch to run a background check "on that individual," i.e. the individual he had in custody. And, he testified that dispatch told him that the subject he had in custody had two prior convictions for DWI. Further, according to Deputy Williams, dispatch gets the information from the NCIC/TCIC database, which he has always found to contain reliable information. The information relayed by dispatch to Deputy Williams was sufficient information for Deputy Williams to take Flores for a mandatory blood draw pursuant to section 724.012(b)(3)(B). Deputy Williams was not required to take further steps and conduct his own investigation into whether the information relayed to him from the NCIC/TCIC database was in fact accurate. *See Comperry*, 375 S.W.3d at 517-18. And, the fact that Deputy Williams did not conduct his own investigation is not affirmative evidence of a section 724.012(b)(3)(B) violation.

With regard to Flores having a common name, on cross examination, Deputy Williams agreed that Flores did have a common name. As explained previously, Deputy Williams was then asked a hypothetical:

> Q: Let me give you a hypothetical. Let's – let's say you stopped somebody for speeding on the side of the road and it turns out that dispatch is telling you that and this person has a common name, dispatch is telling you this person has a warrant out for them. Is it common law enforcement practice to then follow up once that person is brought to the jail to verify that that is indeed the right person who is wanted in the arrest warrant?
>
> A: In – in my past experience if, like we don't have a driver's license number or an I.D. number, we can use descriptive information, tattoos, size, build, just other information like that as well to investigate what's going on.

This testimony by Deputy Williams that Flores has a common name and that if, hypothetically, police officers do not have a driver's license number, they can then use other identifying

information to identify an individual is not evidence that Deputy Williams received unreliable information at the time of the arrest.

We, therefore, conclude that at the suppression hearing Flores did not meet his burden of making a *prima facie* showing of a statutory violation under section 724.012(b)(3)(B). That is, Flores did not show that at the time of the arrest, Deputy Williams did not receive reliable information that Flores had been twice convicted of DWI. Therefore, there is no evidence to support the trial court's finding that the information in this case was not reliable pursuant to section 724.012(b)(3)(B).

### CONCLUSION

Because Flores did not make a *prima facie* showing of a violation under section 724.012(b)(3)(B), the trial court erred in granting Flores's motion to suppress.[2] We, therefore, reverse the trial court's order and remand the cause for further proceedings consistent with this opinion.

Karen Angelini, Justice

Publish

---

[2] Having concluded that the trial court erred in finding the information was not reliable, we need not address the other issues brought by the State.