COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-12-00095-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| JAVIER TERRAZAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20110C04803) |

## **O P I N I O N**

The State of Texas ("State") appeals the trial court's grant of a Motion to Suppress ("the Motion") filed by Javier Terrazas ("Terrazas" or "Appellee") in a pending criminal matter. In a single issue, the State alleges that the trial court abused its discretion and erred in granting the Motion. For the reasons that follow, we reverse and remand.

## **BACKGROUND**

On May 15, 2011, Officer Manuel Castaneda ("Officer Castaneda") arrested Terrazas for a driving while intoxicated ("DWI") offense. Terrazas refused to provide a blood or breath test while at the scene. Officer Castaneda contacted a clerk at the El Paso District Attorney's DIMS[1]

---

[1] The parties did not specify what DIMS stood for at the hearing on the Motion. However, this Court has previously identified "DIMS" as "District Attorney's Information Management System." *See In re State*, 162 S.W.3d 672, 675 (Tex.App.--El Paso 2005, orig. proceeding); *see also Terrell v. City of El Paso*, 481 F.Supp.2d 757, 761 (W.D. Tex. 2007)("DIMS has been described as a 24-hour screening process whereby the El Paso District Attorney's office

office and was informed that Terrazas had two prior DWI offenses, which Officer Castaneda believed were DWI convictions. After receiving this information, Officer Castaneda transported Terrazas to Del Sol Medical Center for a mandatory blood-draw. Officer Castaneda then proceeded with Terrazas to the police station, where Officer Castaneda spoke to the district attorney's DIMS attorney. At that time, the DIMS' attorney advised Officer Castaneda one of the DWI offenses had been "dropped down to an obstruction of highway."

Terrazas was charged by information with the offense of driving while intoxicated, second offense ("DWI"). Terrazas filed a pretrial Motion to Suppress alleging, *inter alia*, that his detention and arrest by the police occurred without warrant or probable cause, and that any evidence seized should be suppressed. The Motion alleged violations of the various amendments of the U.S. and Texas Constitutions, and a violation of Article 38.23 of the Code of Criminal Procedure.

At the outset of the suppression hearing, the parties stipulated to standing and that the search was warrantless. The only witness called to testify at the hearing on the Motion was Officer Castaneda, who testified as to the procedures followed in DWI cases. Furthermore, based on the information he received from the district attorney's DIMS clerk, Officer Castaneda believed the blood draw was in good faith. Officer Castaneda testified that when he first called the district attorney's DIMS office, he was told of the two DWI convictions and given their respective cause numbers. This information was relayed to Office Castaneda when he asked the district attorney's DIMS clerk to "run a rap sheet" on Terrazas. After running the "rap sheet," the district attorney's DIMS clerk relayed the information to Officer Castaneda regarding Terrazas' prior DWI arrests

reviews the facts of an arrest with information from the arresting officers and then makes a real-time decision whether to accept or decline a case.").

2

and subsequent convictions. Officer Castaneda testified that he never physically saw the district attorney's DIMS "rap sheet." He testified he relied on the information in the "rap sheet," given to him by the district attorney's DIMS clerk and believed it to be correct.

At the hearing, the State argued when an individual has two prior DWI convictions, a blood sample can be obtained from that person if: (1) they are arrested for DWI; and (2) they refuse to provide a blood or breath sample.[2] The State also argued that a good-faith belief by the officer that a suspect had been twice-convicted of DWI justified the blood draw. In response, Terrazas argued the Texas Transportation Code mandated an individual must have two prior convictions to justify a blood draw. The trial court took the matter under advisement, and issued a written order granting the Motion on February 28, 2012. The State filed its notice of appeal, following which the trial court filed its findings of fact and conclusions of law.

In its findings of fact, the trial court found Terrazas had been arrested for a DWI offense. Further, Officer Castaneda was advised by the district attorney's DIMS clerk that Terrazas had two prior DWI convictions and no police officer had made any effort to verify that information. Also, Terrazas had refused to consent to a breath or blood test and he was transported for a mandatory blood draw based on the information he had two prior DWI convictions. The trial court found Officer Castaneda's assumption about Terrazas' previous convictions was wrong and the error was "easily detectable." The error was detected later that night when Officer Castaneda consulted with the district attorney's DIMS attorney.

The trial court's conclusions of law noted the State had argued the officers were acting in

---

[2] The Texas Transportation Code § 724.012(b)(3)(B)(West 2011) provides that a breath or blood sample may be taken where a suspect refuses consent and "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . . on two or more occasions, has been previously convicted of or placed on community supervision . . ." for, *inter alia*, prior DWI offenses.

good faith and cited three federal district court cases holding that the good-faith exception to the exclusionary rule does not apply to warrantless searches. The trial court concluded the State had not met its burden of establishing a good-faith exception to the exclusionary rule. In its Conclusion of Law #4, the court concluded that there were no exigent circumstances to prevent Officer Castaneda from accurately determining Terrazas' criminal history while he was in custody, before taking him to the hospital. The trial court concluded that the good-faith exception did not apply and suppressed the blood-test results.

On April 23, 2013, this Court ordered the trial court to prepare supplemental findings of fact regarding whether Officer Castaneda had received "credible" and "reliable" information. The trial court issued its supplemental findings on May 3, 2013, finding that Officer Castaneda received neither "credible" nor "reliable" information.[3]

## DISCUSSION

In a single issue, the State alleges that the trial court abused its discretion and erred in granting the Motion.[4]

## STANDARD OF REVIEW

We review a ruling on a motion to suppress using a bifurcated standard of review. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). We afford almost total deference to the trial court's findings of historical fact that are

---

[3] In its supplemental findings, the trial court found that "[t]he information received was incorrect" and was therefore, by definition, not reliable. The trial court then found that the source was not credible as there was no evidence of "the clerk's education, training or experience" and "no evidence about the data bases or records that the clerk reviewed or could have reviewed." The court also noted the lack of evidence of how often the clerk had been working; whether there were others on shift the clerk could have consulted; how many times the clerk had been called in the past; and whether the clerk had given accurate information on prior occasions.

[4] Terrazas did not file a responsive brief in this appeal.

4

supported by the record, and to mixed questions of law and fact that turn on an assessment of a witnesses' credibility or demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman*, 955 S.W.2d at 89. We review *de novo* the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *See Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673; *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004); *Guzman*, 955 S.W.2d at 89.

Where, as here, the trial judge makes express findings of fact, we must first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra*, 310 S.W.3d at 447; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). However, we review a trial court's legal ruling *de novo*. *State v. Iduarte*, 268 S.W.3d 544, 548-49 (Tex.Crim.App. 2008). "We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case." *Id.; see also State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003), *cert. denied*, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).

**MOTION TO SUPPRESS**

The statute at issue states in relevant part:

(b)   A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

.                    .                    .

5

(3)  at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

.              .              .

(B)  on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code . . . ."

TEX.TRANSP.CODE ANN. 724.012 (b)(3)(B)(West 2011).

Thus, by statute, a peace officer is required to conduct a warrantless blood draw if:   (1) an individual is under arrest for a DWI offense; (2) refuses to voluntarily submit to a taking of a specimen; and (3) the officer possesses or receives reliable information from a credible source that the individual has been previously convicted of two or more DWI offenses.   We note two recent cases interpreting this statute with similar facts applicable to the instant case.

The State directs this Court to *Comperry v. State*, 375 S.W.3d 508 (Tex.App.--Houston [14th Dist.] 2012, no pet.) in support of its argument.   In *Comperry*, the defendant was arrested for DWI following a car accident.   Comperry was taken to jail and an officer obtained his criminal history through a Texas Crime Information Center ("TCIC") printout, in order to determine whether Comperry had been previously convicted of DWI on two or more occasions.   *Id.* at 510. The criminal history information showed four "event cycles" consisting of two DWI arrests and two unrelated misdemeanor arrests.   The criminal history record showed Comperry had pled guilty to one DWI and was convicted, while he pled "no contest" to the second and was convicted of DWI.  *Id.*   However, later in the report it indicates Comperry also pled "no contest" to the offense of obstructing a highway and reflected "CONVICTED-LESSER CHARGE" in the TCIC report.  *Id.*

Based on the report, the arresting officer believed Comperry had been convicted both of

6

DWI and obstructing a highway as part of the same offense. Despite Comperry advising the officer he had only been convicted of one DWI, the officer made no additional effort to confirm Comperry's statement. *Comperry*, 375 S.W.3d at 510-11. A blood draw was performed based on the refusal, pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code. Comperry filed a motion to suppress, arguing that while the TCIC report was from a credible source, the information was not reliable because it was inaccurate and possibly incorrect. *Id.* at 510-12. Comperry further argued that the plain language of Section 724.012(b)(3)(B) required an independent review of both the credibility of the source and the reliability of the conviction information. *Id.* at 513.

Comperry argued the "irregularities" in the TCIC report were such that the officer should have investigated the conviction history further. *Id.* at 517. The Court of Appeals disagreed, noting "[b]ut such subtleties may not have been apparent to an arresting officer, and we are not persuaded that the officer must so closely examine a TCIC report before being entitled to rely on it." *Id.* The Court of Appeals also held that "[t]he assertion that the report was eventually proved incorrect does not mitigate or contradict the fact that Boles possessed reliable information from a credible source at the time that he received the report." *Id.* at 518. The Court of Appeals found no error in denying Comperry's motion to suppress.

Another case which shares similarities to the instant case is *State v. Flores*, 392 S.W.3d 229 (Tex.App.--San Antonio 2012, pet. ref'd). In *Flores*, the State appealed the trial court's grant of a motion to suppress evidence in favor of the defendant, where the trial court found the information received by the officer was not reliable under Section 724.012(b)(3)(B). During a traffic stop, the arresting deputy requested Flores provide a voluntary breath specimen, to which Flores refused.

7

The deputy was advised by his dispatch that Flores had two previous DWI convictions, at which point Flores was taken to a medical center so that a mandatory blood draw could be taken. *Flores*, 392 S.W.3d at 231. The deputy testified the information received from dispatch, which was relayed to officers from the NCIC/TCIC database, was "very reliable," and that he believed the information he received was reliable information from a credible source. *Id.*

Among the arguments raised by Flores, the San Antonio Court of Appeals considered the argument that the deputy should have taken "further steps" to corroborate the information he received from dispatch, but these arguments were rejected. *Id.* at 238. The Court of Appeals held the deputy was "not required to take further steps and conduct his own investigation into whether the information relayed to him" was accurate, and therefore not conducting such an investigation was not a violation of Section 724.012(b)(3)(B). *Id.* The court found Flores failed to make a *prima facie* showing of a statutory violation under Section 724.012(b)(3)(B), "[t]hat is, Flores did not show that at the time of the arrest, Deputy Williams did not receive reliable information that Flores had been twice convicted of DWI." *Id.* The Court of Appeals held there was no evidence to support the trial court's finding the information was not reliable pursuant to Section 724.012(b)(3)(B) and reversed the grant of the motion to suppress. *Id.* at 238-39.

In this case, the trial court's findings of fact include Officer Castaneda's "assumption" that Terrazas had two previous DWI convictions, relayed to him by the district attorney's unidentified DIMS clerk, "was wrong." Furthermore, the trial court found that the error was "easily detectable." In its Conclusion of Law #4, the court held that there were no exigent circumstances to prevent Officer Castaneda from "accurately determining the Defendant's criminal history before taking him to a hospital." The trial court found Officer Castaneda made no effort to

8

investigate the information he had been given by the district attorney's DIMS clerk and granted the motion to suppress.

As both *Flores* and *Comperry* note, law enforcement personally investigating or confirming criminal history is not a requirement under Section 724.012(b)(3)(B). *See Flores*, 392 S.W.3d at 238; *Comperry*, 375 S.W.3d at 517. We conclude the trial court abused its discretion based on its application of the law to the facts by granting the motion to suppress, based on its finding and conclusion the officer could or should have conducted an additional investigation prior to the blood draw, which would have revealed the correct criminal history.[5] The State's sole issue is affirmed.

## CONCLUSION

Having sustained the State's sole issue, the ruling of the trial court is hereby reversed and the case is remanded for further proceedings.

May 31, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

---

[5] We also note that the trial court was incorrect in its supplemental finding that, because the information was "incorrect" that it was "by definition" not reliable. *Compare Flores*, 392 S.W.3d at 237 ("We agree with the State that information can turn out to be false but still be considered reliable."). However, we will not address this issue further as we have already determined that the court abused its discretion by holding that further investigation was required.

9