**Opinion issued February 6, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00898-CR

———————————

**MICHAEL JOE LYSSY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. 314207**

---

## O P I N I O N

This appeal concerns a Texas statute which requires a law enforcement officer to take a blood sample from a suspect arrested for driving while intoxicated when the officer has reliable information from a credible source that the suspect has two prior convictions for driving while intoxicated. *See* TEX. TRANSP. CODE

ANN. § 724.012(b) (West 2011). Appellant Michael Joe Lyssy was charged by information with the misdemeanor offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). Lyssy moved to suppress evidence of a blood draw taken the night of his arrest. He argued that the report of his criminal history on which the officer relied was not reliable or credible because it listed a conviction for "driving while intoxicated 2nd" but no prior DWI conviction. The trial court denied this motion. After the trial court denied his motion to suppress, Lyssy entered a plea of nolo contendere and was convicted of driving while intoxicated.

In his sole appellate issue, Lyssy argues that the trial court erred by denying his motion to suppress. We affirm.

**Background**

Officer Gavino Rivas of the League City Police Department stopped Lyssy for failing to maintain a single lane of traffic. Rivas performed a field sobriety test. He also asked Lyssy to blow into a breathalyzer, but was refused. He then arrested Lyssy.

Rivas called League City dispatch and asked for a report on Lyssy from two databases, the Texas Crime Information Center and the National Crime Information Center (TCIC/NCIC). Rivas provided Lyssy's license plate number and his driver's license number to query. The resulting report listed multiple event

2

cycles, including an arrest nearly seven years earlier, which the database reported resulted in a guilty plea and conviction for the class A misdemeanor offense of "driving while intoxicated 2nd."  No other DWI conviction was included in the report.

Dispatch orally reported its findings to Rivas over the radio. In Rivas's words, "The results came back that Mr. Lyssy's license was suspended, that he had prior convictions for driving while license suspended, and he had . . . a conviction for DWI second conviction." Rivas testified that he did not remember hearing anything about a first offense for DWI.

Based upon this information and the mandatory blood-draw statute (Transportation Code chapter 724), Rivas requested a sample of Lyssy's blood without obtaining a warrant. Lyssy refused. Rivas transported him to the hospital where one of its employees extracted a blood specimen.

At the subsequent hearing on Lyssy's motion to suppress the evidence resulting from the blood draw, Rivas testified, "From the information I have now . . . he did not have two convictions." He also testified that on the night of the arrest, he relied on the TCIC/NCIC report to conclude that Lyssy "did have two prior convictions for driving while intoxicated," and at the time he had no reason to doubt that information from the report.

The TCIC database is maintained by the Texas Department of Public Safety. Both TCIC and NCIC are updated "24/7." Each participating law enforcement agency inputs its own information on arrests. It is the responsibility of each agency to check the information it inputs for accuracy. As Rivas described TCIC/NCIC:

> It's . . . the database of all criminal histories, both within Texas and nationally. It's administered by the individual law enforcement agencies. For League City, we place everything there, from stolen vehicles, missing children, warrants, things like that; and we're responsible for administering our portion of the database.

Rivas was asked how often he relies on information from TCIC/NCIC. He replied, "any incident, any contact with a potential subject, we rely on the returns given by our dispatch via TCIC/NCIC." He testified that he has found information from TCIC/NCIC to be credible and reliable in the past. When questioned whether he had ever had a problems with the accuracy of information from the databases, he answered, "On a general basis, no, sir." The trial court denied the motion to suppress.

Pursuant to a plea bargain, Lyssy pleaded nolo contendere and was sentenced by the trial court to 365 days in jail, in addition to a $300 fine. The court suspended this sentence and imposed a twenty-four month term of community supervision. The trial court certified his right to appeal its decision on the motion to suppress.

4

**Analysis**

In his appellate brief, Lyssy offers two reasons why the blood evidence should have been suppressed. His first reason is that the statute relied upon by the State to justify the blood draw, TEX. TRANSP. CODE ANN. § 724.012(b), is no longer a legitimate basis for search in light of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). His second reason is that the statute itself was not satisfied because the officer lacked reliable information that Lyssy had two prior convictions for driving while intoxicated, as would require a blood draw under the statute.

The relevant portion of the Transportation Code reads as follows:

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

. . .

(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

. . .

(B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [Driving While Intoxicated], 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

(c) The peace officer shall designate the type of specimen to be taken.

5

TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B), (c). When a person is arrested under the circumstances described in section 724.012(b), that person's refusal to submit to the taking of the specimen does not suspend the officer's statutory duty to take it. *Id.* § 724.013.

## I. Waiver of constitutional challenge to section 724.012(b)

In his brief, Lyssy asserts that extraction of blood pursuant to section 724.012(b) is unconstitutional given the Supreme Court's decision in *McNeely*. However, Lyssy did not argue before the trial court that blood extraction pursuant to section 724.012(b) was unconstitutional. Lyssy's argument at the hearing on his motion to suppress was directed solely at whether the statutory predicates for a blood draw were satisfied. RR 37–43. At no point during the hearing did he attack the legitimacy of the statute as a basis for taking blood in the absence of a warrant.

In order for a defendant to preserve his complaint for appellate review, he must present to the trial court a timely objection, request, or motion stating the specific grounds for the ruling he wishes. TEX. R. APP. P. 33.1(a). An appellant's issue must correspond with the objection he made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). "'An objection stating one legal theory may not be used to support a different legal theory on appeal.'" *Id.* (quoting

6

*Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990)). This is true even if the alleged error implicates constitutional guaranties. *Id.*

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). "[A] party must be specific enough so as to 'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 313.

To decide whether a general complaint was sufficient to preserve error, context must be considered. *Id.* "When the correct ground for exclusion was obvious to the judge and opposing counsel, no forfeiture results from a general or imprecise objection." *Id.* On the other hand, "when the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal." *Id.*

The arguments and evidence at the hearing were narrowly focused on whether the information requirements of section 724.012(b)(3) were satisfied. The constitutionality of a search pursuant to the statute was not called into doubt. Looking to Lyssy's written motion to suppress, he likewise did not specifically

challenge the constitutionality of blood draws made under the statute's authority. CR 17–20. Although he did complain that the search was warrantless and conducted in the absence of exigent circumstances, he did so in a general form:

> The warrantless stop and search of the Defendant and the automobile and Defendants' personal property and the interrogation of Defendant by the police were void and illegal because they were *conducted in the absence of exigent circumstances* to stop the vehicle which Defendant was driving and search him and the vehicle.

(Emphasis supplied.) Considered in context, we conclude that this language was not sufficient to inform the trial court and opposing counsel of a challenge to the validity of searches under section 724.012(b). *See id.* at 312; *cf. Buchanan v. State*, 207 S.W.3d 772, 777 (Tex. Crim. App. 2006) ("[T]rial counsel's allusions to 'consent' and 'exigent circumstances' do not necessarily or exclusively refer to Chapter 14, so as to make it 'obvious' that the appellant was raising it in addition to his purely constitutional claims.").

It is true that Lyssy's appellate objection to the constitutionality of the search hinges on his claim that exigent circumstances were absent. Still, this is not sufficient to interpret Lyssy's written motion to suppress as a challenge to the constitutionality of searches pursuant to the statute. This is because "a complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal." *Resendez*, 306 S.W.3d at 314. As the Court of Criminal Appeals has held, "Only when there

are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved." *Id.* The context of the motion to suppress, as it developed at the hearing, demonstrates that Lyssy's challenge was based solely on a failure to observe the statute's terms, not an attack on the constitutionality of what it authorizes. *See id.* We conclude that Lyssy forfeited his objection to the constitutionality of taking blood under section 724.012(b). *See id.* at 316–17. As such, we assume, without deciding, the constitutionality of section 724.012(b) for purposes of this appeal.[1]

## II.     Reliability of information to justify blood draw

Lyssy's second argument is that even if section 724.012(b) is a constitutional basis for a warrantless search, "the blood draw must still be excluded because the information received by Officer Rivas had an error on its face making it internally inconsistent and unreliable." We review a trial court's decision on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). While we show "almost total deference" to the trial court's determinations of historical fact, we review its application of the law of search and seizure to the facts de novo. *Id.* Since the trial judge in this case

---

[1]     The dissent declares *McNeely* to be "inapplicable" on the merits. This is an unresolved issue. *See, e.g.*, *Aviles v. Texas*, No. 13-6353, 2014 WL 102362 (U.S. Jan. 13, 2014) (order vacating judgment and remanding case for reconsideration in light of *McNeely*).

did not make express findings of fact, we will imply "the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). Ultimately, "[w]e will sustain the trial court's ruling if its ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra*, at 447–48 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

The Transporation Code establishes that *motor vehicle operators who are arrested for DWI offenses* are deemed to have consented, subject to the remainder of the chapter, "to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance." TEX. TRANSP. CODE ANN. § 724.011(a).[2] Separate from the concept of implied consent by drivers arrested on suspicion of DWI, the statute also *requires* an

---

[2]   The dissent misreads the statute when it alleges that our holding "vitiates" the implied consent statute. As noted above, the consent that is "deemed" by the statute is triggered *by the arrest for the DWI offense*, and that deemed consent is not conditioned on two prior DWI convictions. *See* TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011). The statute anticipates that despite this deemed consent, a person nevertheless may refuse the request of a peace officer to submit to the taking of a specimen. In that event, certain consequences result, including license suspension and confiscation. *See, e.g.*, *id*. § 724.032.

10

officer to take a breath or blood specimen when "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . . on two or more occasions, has been previously convicted of or placed on community supervision for [driving while intoxicated] . . . ." *Id.* § 724.012(b)(3).[3]

Lyssy does not challenge the credibility of TCIC/NCIC as a source of information or the credibility of the League City Police Department dispatcher as a conduit of TCIC/NCIC information to an officer in the field. What he does challenge is the reliability of the information Rivas received from the dispatcher: he asserts that it contained an error that made it internally inconsistent. Specifically, Rivas was told that Lyssy had a conviction for "DWI Second Conviction," but he was not specifically informed of any other convictions for

---

[3]   The officer's possession or receipt of "reliable information from a credible source that the person . . . on two or more occasions, has been previously convicted of or placed on community supervision for [driving while intoxicated]," *id.* § 724.012(b)(3), is therefore significant not as a precondition for deemed consent, as suggested by the dissent, but instead because it is one of the conditions under which a peace officer "shall require" the taking of the specimen, even in the face of the person's refusal to submit voluntarily. *Id.* § 724.012(b). Accordingly, the dissent's suggestion that the court holds "that an officer's subjective belief that an implied consent statute has been satisfied is sufficient to imply consent" completely misconstrues both the operation of the statute and our application of it, and we disavow that mischaracterization of our holding.

driving while intoxicated. Lyssy thus argues that the information Rivas received was patently inconsistent and therefore unreliable.

Rivas testified that he relies on TCIC/NCIC for "any contact with a potential subject," that he has found information from the database to be credible and reliable, and that "on a general basis," he has had no problems with the accuracy of the database. Any discrepancy inferred from the bare fact that Rivas was informed of a "DWI Second Conviction" but not a first conviction for driving while intoxicated did not necessarily render the information Rivas received from his dispatcher unreliable.

In *Comperry v. State*, an officer arrested the defendant for driving while intoxicated and took him to jail. 375 S.W.3d 508, 510 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Once there, the officer obtained a TCIC printout for the defendant. *Id.* The report listed two convictions for driving while intoxicated, one in Harris County and one in Galveston County. *Id.* In reality, the defendant had only been convicted once of DWI. *Id.* at 511. The event cycle for the Galveston County matter recited that the defendant had been arrested for DWI. *Id.* at 510. It then listed two convictions—one for obstructing a highway and one for DWI—but the defendant actually had been convicted only of obstructing a highway. *Id.* The defendant further argued that the information contained in the TCIC report contained "facial irregularities" because the convictions were "the result of the

12

same plea on the same date, in the same court, and under the same cause number." *Id.* at 516-17. The defendant argued that the irregularities should have alerted the officer and spurred an investigation of the underlying facts. *Id.* Despite the trial court's finding that the information was "confusing and possibly incorrect in the way it [was] displayed," *id.* at 511, the court of appeals rejected the defendant's position. *See id.* at 517. It reasoned that the TCIC record "plainly reflected" multiple convictions for driving while intoxicated and that an officer need not "so closely examine a TCIC report before being entitled to rely on it." *Id.*

In the present case, Rivas was told by the dispatcher that Lyssy had a conviction for "DWI Second Conviction." As in *Comperry*, this information implied multiple convictions for driving while intoxicated. *See id.* While the information communicated to Rivas could be characterized as being incomplete insofar as the dispatcher did not also mention a first conviction for DWI, Rivas did not have to further investigate the information he received "before being entitled to rely on it" in the field. *See id.*; *see also State v. Terrazas*, 406 S.W.3d 689, 694 (Tex. App.—El Paso 2013, no pet.) ("[L]aw enforcement investigating or confirming criminal history is not a requirement under [the blood draw statute].").[4]

---

[4]    Like the court in *State v. Flores*, 392 S.W.3d 229 (Tex. App.—San Antonio 2012, pet. ref'd), "we do not mean to suggest that information contained in the NCIC/TCIC is per se reliable." *Id*. at 237. Nothing in our opinion should be taken to suggest the impropriety of a challenge to reliance on such

Later, with the benefit of additional information obtained by the time of the hearing on the motion to suppress, Rivas testified that the report contained an error. But nothing contained in the information received from TCIC/NCIC or in the information communicated by the dispatcher to Rivas rose to the level of a glaring contradiction that would undermine the general reliability of the information coming from a source that has not been challenged on the basis of its credibility. The trial court therefore reasonably could have concluded that the report's inclusion of a conviction specifically identified as "driving while intoxicated 2nd" was not rendered facially unreliable simply because the report did not also separately identify the preceding DWI conviction.

We conclude that the record supports the conclusion that when Rivas heard from his dispatcher that Lyssy had been convicted of "DWI Second Conviction," he possessed reliable information from a credible source that Lyssy had been convicted twice of driving while intoxicated. *See Terrazas*, 406 S.W.3d at 694; *State v. Flores*, 392 S.W.3d 229, 238 (Tex. App.—San Antonio 2012, pet. ref'd); *Comperry*, 375 S.W.3d at 518. We therefore overrule Lyssy's issue.

---

information given an appropriate record. *See id.* ("[A] trial court must make the finding of reliability of the information based on the specific evidence presented.").

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).