

# NUMBER 13-11-00694-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WILLIAM SMITH A/K/A**
**BILL SMITH,**                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

## On appeal from the 94th District Court
## of Nueces County, Texas.

---

# OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

After re-consideration of *Missouri v. McNeely,* 133 S. Ct. 1552 (2013) and the parties' supplemental briefing, we withdrew our memorandum opinion and judgment, dated October 31, 2013. *See Smith v. State*, No. 13-11-694-CR, 2013 WL 5970400 (Tex. App.—Corpus Christi Oct. 13, 2013, no pet.) (mem. op., not designated for publication). We replace it with the following opinion and judgment.

Appellant William Smith a/k/a Bill Smith appeals his conviction for driving while intoxicated—third offense,[1] a third-degree felony enhanced to a habitual felony offender. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West, Westlaw through 2013 3d C.S.). The trial court found appellant guilty, and after finding two prior felony conviction enhancements to be true,[2] assessed punishment at twenty-five years imprisonment. *See id.* § 12.42(d). In his original brief, appellant complains the trial court erred by: (1) refusing to appoint a new attorney on the day of trial; (2) admitting blood sample evidence; (3) allowing fingerprint expert testimony and admitting prior judgments authenticated thereby; and (4) finding the evidence was sufficient to show two prior felony convictions. In his supplemental briefs, he asserts two additional issues, which we construe together: (1) the trial court erred by allowing the State to introduce blood sample evidence at trial that was collected without a warrant and in violation of his Fourth Amendment rights; and (2) Section 724.012(b)(3)(B) of the Texas Transportation Code, which the State relied on to justify the search, is unconstitutional as applied. We reverse and remand.

## I. BACKGROUND

State trooper David Anguiano stopped appellant for driving without wearing a seat belt. Upon approaching appellant's car, Anguiano "smelled the strong odor of some sort of alcoholic beverage coming from him" and saw numerous open alcoholic beverages

---

[1] Appellant was previously convicted of two offenses relating to the operation of a motor vehicle while intoxicated: (1) on March 10, 2006, in Cause No. 63519, in the County Court at Law of San Patricio County, Texas; and (2) on March 28, 2008 in Cause No. 2007-9764-3 in the County Court at Law No. 3 of Nueces County, Texas.

[2] Appellant was also previously convicted of two felony offenses for burglary of a habitation: (1) on June 7, 1989, in Cause No. 88-CR-1586-A, in the 28th District Court of Nueces County, Texas; and (2) on February 19, 1992, in Cause No. 2870-1, in the 156th District Court of Live Oak County, Texas.

spread throughout the vehicle. Anguiano observed that appellant's movements were slow and that he had glassy, blood-shot eyes. After further investigation, including administering the standardized field sobriety tests, Anguiano arrested appellant for driving while intoxicated.[3]

Anguiano testified that appellant made "a statement to the fact that it was a felony D.W.I. for him." Anguiano then "ran [appellant's] information" with his in-car computer and verified appellant's criminal history with the communications operator who informed Anguiano that appellant had two prior DWI convictions. Due to appellant's allegedly belligerent behavior, a different officer transported appellant to the hospital while Anguiano followed.[4] At the hospital, Anguiano tried to obtain appellant's consent to take a blood specimen. When consent was not forthcoming, Anguiano informed appellant the blood draw was mandatory. Approximately one hour after the initial traffic stop, a certified medical technologist took a sample of appellant's blood.

Anguiano did not obtain a search warrant to collect appellant's blood sample. Instead, Anguiano relied solely on Texas Transportation Code section 724.012(b)(3)(B), which he interpreted to mean "you're authorized to conduct a mandatory blood draw on— if we have probable cause to believe that the person has two previous convictions . . . for D.W.I. . . ." After the blood was drawn and delivered to the Texas Department of Public Safety lab, Emily Bonvino, a forensic scientist, performed a chemical analysis of

---

[3] Anguiano indicated that additional police officers were involved in the arrest and transport of appellant.

[4] Anguiano testified that his police cruiser did not have a "cage" and that suspects would ordinarily ride in the front seat. Appellant was uncooperative and was transported to the hospital in the backseat of another officer's vehicle.

appellant's blood. During trial, she testified that appellant's blood sample contained .21 grams of alcohol per 100 milliliters of blood. Over appellant's objection on constitutional grounds, the trial court admitted the blood evidence.[5]

## II. BLOOD DRAW

Appellant complains that the results of the blood test should have been excluded because his blood sample was taken in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. *See* U.S. CONST. amend. IV. The State argues that appellant's blood was seized pursuant to the Fourth Amendment exception of consent because section 724.012(b) of the Texas Transportation Code implies a person's consent to a blood draw. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (West, Westlaw through 2013 3d C.S.). The State also defends the blood draw under the automobile, search-incident-to-arrest, and special needs exceptions. We disagree with the State.

## A. Standard of Review

We review a trial court's ruling on whether to admit or exclude evidence for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993) (en banc). We view the facts in the light most favorable to the trial court's decision and we give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law to those facts. *Dixon,* 206 S.W.3d at 590 (*citing State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

---

[5] Appellant did not file a motion to suppress the blood evidence, but rather objected on the basis of a violation of the Fourth Amendment prior to the admission of the results of the blood analysis.

**B.     Applicable Law**

**1.     Fourth Amendment**

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .

U.S. CONST. amend IV.   A warrantless search is presumed unreasonable.   *See United States v. Robinson*, 414 U.S. 218, 224 (1973).   The taking of a blood sample is a search that triggers the protections of the Fourth Amendment.   *See Schmerber v. California*, 384 U.S. 757, 770 (1966).   However, there are several exceptions to the Fourth Amendment warrant requirement.   Law enforcement may face a situation where exigent circumstances justify a warrantless search, such as a "hot pursuit" or the need to provide emergency assistance to a homeowner.   *See Michigan v. Fisher*, 558 U.S. 45, 47–48 (2009); *United States v. Santana*, 427 U.S. 38, 42–43 (1976).   Exigent circumstances may justify a warrantless search in drunk driving investigations if police officers reasonably believe they face an emergency situation in which the delay necessary to obtain a warrant threatens the destruction of evidence.   *Schmerber*, 384 U.S. at 770.[6]

The United States Supreme Court discussed exigency in the context of unconsented, warrantless blood draws in *Missouri v. McNeely*, holding that "in those drunk driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search,

---

[6] According to the State, the Supreme Court has mislabeled a blood draw as a search and urges us to re-label a blood draw as a "seizure" instead of a "search."   We recognize that the Supreme Court's holdings in *Schmerber* and *McNeely* are mandatory precedent and conclude that a blood draw in a DWI investigation constitutes a "search" under the Fourth Amendment.   *See Missouri v. McNeely*, 133 S.Ct. 1552, 1561 (2013); *Schmerber v. California*, 384 U.S. 757, 770 (1966).

5

the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 133 S.Ct. at 1567–68. The *McNeely* Court held that the determination of whether a law enforcement officer is justified in acting without a warrant turns on the totality of circumstances on a case-by-case basis. *Id.* at 1559.

### 2. Implied Consent

Warrantless searches may also be premised on consent. *See Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973). After the *McNeely* decision, appellate courts distinguished *McNeely* by applying the implied consent principle found in sections 724.012(b)(3)(B) and 724.011. *See* TEX. TRANSP. CODE ANN. §§ 724.011, 724.012(b) (West, Westlaw through 2013 3d C.S.); *Aviles v. State* 385 S.W.3d 110, 115 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 132 S.Ct. 902 (2014). Those statutes provide a statutory scheme whereby the taking of blood and breath samples is premised on "implied consent." Texas law provides that in some situations, the taking of blood or breath evidence in a DWI investigation is required. *See* TEX. TRANSP. CODE ANN. §§ 724.011, 724.012(b). Section 724.012(b) of the Texas Transportation Code states:

> (b) A peace office shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> . . . .
>
> > (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
> >
> > . . . .

6

> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code. . . .

*Id.* § 724.012(b)(3)(B).

The implied consent law does just that—it implies a suspect's consent to a search in certain limited instances. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). While *McNeely* positively references the implied consent laws of various States, it also points out that the consequences associated with implied consent laws—typically loss of driving privileges and use of refusal as evidence—are triggered when the driver *withdraws* consent. *McNeely*, 133 S.Ct. at 1566 (emphasis added).

In *Aviles v. State*, our sister court in San Antonio held that the Texas Transportation Code expands the State's ability to search and seize without a warrant, providing implied consent to obtain blood samples from persons suspected of driving while intoxicated, in certain circumstances, even without a search warrant. *See Aviles,* 385 S.W.3d at 115. As recognized by both parties, the facts in *Aviles* are similar to the instant case: no accident, no injuries, no consent, no warrant, and a blood draw based solely on section 724.012(b)(3)(B). *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Aviles,* 385 S.W.3d at 112.

The United States Supreme Court, however, subsequently vacated and remanded *Aviles v. State* for consideration in light of *McNeely*. *See Aviles*, 132 S.Ct. at 902. After reviewing the denial of the motion to suppress in light of *McNeely*, the San Antonio Court of Appeals reversed the trial court's judgment and remanded the matter to the trial court for a new trial. *See Aviles v. State*, No. 04-11-00877-CR, 2014 WL 3843756, at *3 (Tex.

7

App.—San Antonio Aug. 6, 2014, pet. filed) (holding that the mandatory blood draw statute is not a permissible exception to the warrant requirement; and concluding that the blood draw was an unconstitutional search and seizure and violated Aviles's rights under the Fourth Amendment).

**C.      Analysis**

### 1.      Implied Consent & Exigency

A warrantless blood draw is constitutional if it is conducted pursuant to a recognized Fourth Amendment exception. *McNeely*, 133 S.Ct. at 1568. The State argues that the Texas implied consent statutory framework, which includes the mandatory blood draw statute, is an exception to the Fourth Amendment warrant requirement and supports this claim by pointing out the narrow legal issue addressed by the *McNeely* Court. The State asserts that because *McNeely* did not address the constitutionality of implied consent laws, a defendant's implied consent is an exception to the Fourth Amendment warrant requirement. By this reasoning, whether a person withdraws consent is irrelevant when they are suspected of DWI under circumstances defined by section 724.012(b)(3). This reasoning is unsound and the conclusion is incorrect.

As the Texas Court of Criminal Appeals noted in *Beeman*, "the implied consent statute requires the State to take an arrested suspect's blood, over his refusal, when there is an accident and someone is injured." *Beeman*, 86 S.W.3d at 615. In concluding that the implied consent law gives a suspect's consent in certain circumstances, *Beeman* recognized that section 724.011 is a statutory version of the exigency exception discussed in *Schmerber*. *See Schmerber*, 384 U.S. at 758. *Beeman*, however, did not find that a driver stopped only on suspicion of DWI with two prior DWI convictions presents

8

an exigent circumstance. In such an instance, the only arguable exigency would be the dissipation of alcohol in the blood over time, which *McNeely* expressly disqualifies as a per se exigent circumstance. *See McNeely*, 133 S.Ct. at 1559.

The record in this case does not support a finding of exigent circumstances. Anguiano did not respond to an accident or a medical emergency. *Cf. Schmerber*, 384 U.S. at 758. His sole reason for transporting appellant to the hospital was to obtain a blood sample for the DWI investigation. Additionally, there was no testimony to show that Anguiano would have been delayed had he attempted to obtain a search warrant or that he faced any exigent circumstances beyond those found in a normal DWI investigation. The facts in this case are similar to the hypothetical scenario contemplated in *McNeely*. *See McNeely*, 133 S.Ct. at 1561 (discussing that when another officer transports a suspect to the hospital and there is no significant delay in obtaining a warrant, there would be no plausible justification for an exception to the warrant requirement). Anguiano could have taken steps to secure a search warrant while appellant was transported to the hospital by a different officer. Anguiano's warrantless and nonconsensual blood draw is not justified by exigent circumstances. *See McNeely*, 133 S.Ct. at 1567–68; *Reeder*, 428 S.W.3d at 930; *Sutherland*, 436 S.W.3d at 40.

### 2. Automobile Exception

The State argues that the warrantless blood draw is justified by the automobile exception. *See California v. Carney,* 471 U.S. 386 (1985); *Carroll v. United States*, 267 U.S. 132 (1925). The automobile exception turns on a reduced expectation of privacy in a vehicle. *See South Dakota v. Opperman*, 428 U.S. 364, 367 (1976) (holding that "[b]esides the element of mobility, less rigorous warrant requirements govern because

the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office"). These reduced expectations of privacy derive from the pervasive regulation of vehicles capable of traveling on the public highways. *Cady v. Dombrowski*, 413 U.S. 433, 440–41 (1973).

The State has provided no authority that applies the automobile exception to DWI blood draws. Instead, we find contrary authority. A compelled physical intrusion beneath a defendant's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation is such an invasion of bodily integrity that it implicates an individual's "most personal and deep-rooted expectations of privacy." *Winston v. Lee*, 470 U.S. 753, 760 (1985); *see also Skinner v. Ry. Labor Executives' Ass'n.*, 489 U.S. 602, 616 (1989). While we agree with the State that a driver has a reduced expectation of privacy, this reduced expectation extends to items within the car that person is driving, not inside the person's body. *See Carney,* 471 U.S. at 392. A warrantless blood draw is not justified by the automobile exception.

### 3. Search-Incident-to-Arrest

Next, the State argues that the blood draw is valid because it was conducted pursuant to the search-incident-to-arrest exception to the Fourth Amendment. The basis for the search-incident-to-arrest exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession. *Cupp v. Murphey*, 412 U.S. 291, 295 (1973). The court in *Cupp*, deciding on the constitutionality of a warrantless search of defendant's fingernails, held that "considering the existence of probable cause, the very limited intrusion undertaken incident to the station house

10

detention, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments." *Id.* at 296.

A search of a person's fingernail scrapings is different than a search of a person's blood. Blood testing differs in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a now or never situation. *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973). For example, unlike circumstances in which the suspect has control over easily disposable evidence, *see Cupp*, 412 U.S. at 296, blood alcohol content evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner. *McNeely*, 133 S.Ct. at 1561. Because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood draw, some delay between the time of the arrest or accident and the time of the draw is inevitable, regardless of whether police officers are required to obtain a warrant. *Id.*

While we agree with the State that blood testing is relatively common, routine, and safe, we find that the important consideration in justifying a search-incident-to-arrest is the destructibility of the evidence. *See id.* A warrantless blood draw is not necessarily supported by the natural dissipation of blood in the body, and we are unpersuaded that the search-incident-to-arrest exception applies in such cases. *See id.*

4.    **Special Needs Exception**

11

Finally, the State argues that the special needs exception justifies a warrantless blood draw. The special needs exception applies where a State's operation of a probation system, like its operation of a school, government office, or prison, or its supervision of a regulated industry, presents "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements. *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987). The State cites *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602 (1989). Despite the State's claims that *Skinner* authorized warrantless, suspicion-less blood draws, the testing scheme in *Skinner* mandates testing railroad workers following railway accidents or incidents of rule violations, and it authorizes testing upon reasonable suspicion that an employee is under the influence of alcohol. *Skinner*, 489 U.S. at 609–11. The *Skinner* Court held that the agency prescribed toxicological tests not to assist in the prosecution of employees, but rather "to prevent accidents and casualties in railroad operations that result from impairment of employees by alcohol or drugs." *Id.* at 620; *see Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earl*, 536 U.S. 822, 828 (2002) (holding that in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable when special needs . . . make the warrant and probable-cause requirement impracticable.). *Skinner* further held that the government's interest in dispensing with the warrant requirement is at its strongest when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." *Id.* at 623.

The facts in the present case are different than those in *Skinner*. While the government has a significant interest in protecting the public from drunk drivers, the

12

purpose of blood and breath testing in DWI investigations is to collect evidence for criminal prosecution. The State does not argue that applying for and obtaining a search warrant would have frustrated Anguiano's search of appellant's blood. Inasmuch as the State did not perform the blood draw in the context of safety and administrative regulations, the special needs exception does not apply.

### 5.    Summary

In this case, appellant's blood draw was not supported by exigent circumstances, and we find the other exceptions argued by the State do not apply. Therefore, the warrantless search of appellant's blood was conducted in violation of his Fourth Amendment rights.

### III.    TRANSPORTATION CODE SECTION 724.012(B)

Appellant further argues that the warrantless blood draw conducted pursuant to section 724.012(b) is unconstitutional as applied to him. We agree.[7]

### A.    Applicable Law

A litigant raising an "as applied" challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances. *State v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that, in its operation, the challenged statute was unconstitutionally applied to him; the fact that it may be unconstitutional as to others is not sufficient or even relevant. *Id.*    "In enacting a statute, it is presumed . . . compliance

---

[7] Appellant does not raise a facial constitutional challenge to section 724.012.

13

with the constitutions of this state and the United States is intended . . . ."). *Id.*; *see Bays v. State*, 396 S.W.3d 580, 584–85 (Tex. Crim. App. 2013) ("[W]e necessarily focus our attention on the literal text of the statute . . . [I]t is not for the courts to add to or subtract from such a statute."); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

**B.    Analysis**

The State argues that language of section 724.012(b) stating "[a] peace officer shall require the taking of a specimen of the person's breath or blood" means that a specimen may be taken purely under the authority of the statute.    The State asserts that section 724.012(b) and a search warrant signed by a magistrate are collateral sources of authority.    This interpretation is incorrect.    While we agree with the State that the language of section 724.012(b) requires an officer to obtain a blood sample if the officer learns that a DWI suspect has two previous DWI convictions, there is no language in the statute giving the officer authority to effect a search without a warrant.    *See* TEX. TRANSP. CODE ANN. § 724.012(b); TEX. GOV'T CODE ANN. § 311.021(1) (West, Westlaw through 2013 3d C.S.).    An officer can comply with the statute by obtaining a sample pursuant to a search warrant.    *See* TEX. TRANSP. CODE ANN. § 724.012(b).

Our Court has previously recognized that section 724.012(b)(3)(B) does not create a new and distinct exception to the Fourth Amendment warrant requirement.    *See State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted).    As we stated in *Villarreal*, absent a warrant, exigent circumstances, or consent, a blood draw is unreasonable under the Fourth Amendment. *Id.* at *41.    We emphasized that "the constitutionality of the repeat offender provision of

14

the mandatory blood draw statute must be based on the previously recognized exceptions to the Fourth Amendment requirement." *Id.*

Many of our sister courts have held that warrantless blood draws conducted pursuant to section 724.012(b) must fall under a recognized exception to the Fourth Amendment warrant requirement. *See State v. Anderson,* No. 09-13-00400-CR, 2014 WL 5033262 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.); *McNeil v. State*, No. 04-13-00415-CR, 2014 WL 3843757 (Tex. App.—San Antonio Sept. 2, 2014, pet. filed); *McGruder v. State*, No. 10-13-00109, 2014 WL 3973089 (Tex. App.—Waco Aug. 14, 2014, pet. filed); *Aviles*, 2014 WL 3843756; *Forsyth v. State*, 438 S.W.3d 216 (Tex. App.—Eastland 2014, pet. ref.d); *Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted); *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted.); *Sutherland v. State*, 436 S.W.3d 28, 34–35 (Tex. App.—Amarillo 2014, pet. filed); *see also Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544 (Tex. App.—Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication); *State v. Ballard*, No. 11-13-00224-CR, 2014 WL 3865815 (Tex. App.—Eastland July 31, 2014, pet. filed) (mem. op., not designated for publication); *Fitzgerald v. State*, No. 04-13-00662-CR, 2014 WL 3747270 (Tex. App.—San Antonio July 30, 2014, pet. filed) (mem. op., not designated for publication); *Reeves v. State*, No. 07-13-00324-CR, 2014 WL 3360306 (Tex. App.—Amarillo July 8, 2014, pet. filed) (mem. op., not designated for publication); *Sharma v. State*, No. 05-13-003390-CR, 2014 WL 2538882 (Tex. App.—Dallas June 5, 2014, no pet.) (mem. op., not designated for publication); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30,

2014, pet. granted) (mem. op., not designated for publication); *State v. Baker*, No. 12-12-00092-CR, 2013 WL 5657649 (Tex. App.—Tyler Oct. 16, 2013, pet. dism'd) (mem. op., not designated for publication); *but see Perez v. State*, No. 01-12-01001-CR, 2014 WL 943126 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet.) (holding that a warrantless taking of defendant's blood sample following his DWI arrest did not violate defendant's Fourth Amendment rights, as defendant's consent to taking of blood sample was implied pursuant to applicable provision of implied consent law); *Polito v. State*, No. 05-12-1720-CR, 2014 WL 348533 (Tex. App.—Dallas Jan. 30, 2014, no pet.) (mem. op., not designated for publication) (holding that even if suspect refused, the [blood] specimen would still have been taken, because the officer had reliable information from a credible source that [suspect] had two or more prior convictions for DWI).[8]

Officer Anguiano, by obtaining a search warrant, could have complied with both the statutory requirement that he obtain a blood sample and the constitutional protections of the Fourth Amendment. Interpreting section 724.012(b) in such a way as to ignore the safeguards of the Fourth Amendment is an unconstitutional application of Texas law, which we avoid. *See* TEX. GOV'T CODE ANN. § 311.021(1). Without a showing of exigent circumstances or express consent, Anguiano was obligated to obtain a blood sample consistent with the requirements of the Fourth Amendment. *See McNeely*, 133 S.Ct. at 1559; *Beeman,* 86 S.W.3d at 616. Since the blood evidence was obtained in violation of appellant's Fourth Amendment rights, the evidence was inadmissible. *See Mapp v.*

---

[8] In other cases, the First Court of Appeals held that appellants failed to preserve any constitutional challenge to section 724.012(b). *See Lyssy v. State*, 429 S.W.3d 37 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Kay v. State*, No. 01-13-00595-CR, 2014 WL 3697917 (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet.) (mem. op., not designated for publication).

*Ohio*, 367 U.S. 643, 655 (1961) (Fourth Amendment requires exclusion of evidence obtained in violation thereof; Fourteenth Amendment makes requirement applicable to States).

## IV. HARM ANALYSIS

Having concluded that the admission of the blood evidence was a constitutional error, we conduct a harm analysis pursuant to Rule 44.2(a). *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001). We must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

After the presentation of evidence in the guilt/innocence phase, the trial court stated:

> Well, as I watched the video I think there were some signs of intoxication, but quite frankly, I was surprised when I heard the results of the blood alcohol that Mr. Smith did anywhere near as well as he did on the video. I mean, good, I mean, because it was—I mean, signs of intoxication, but I don't know, was he intoxicated where he lost the normal use of his mental or physical faculties? It was a kind of a close call, quite frankly, at a beyond a reasonable doubt standard; but I mean, the fact of the matter is a .21 is far in excess of .08, so—I mean, the legislature has drawn that as a bright line rule, so based upon that I find you guilty of this offense beyond a reasonable doubt . . . .

Based on the trial court's analysis, it is apparent that the blood evidence had a significant impact on appellant's conviction. As the trial court indicated, without the introduction of the blood evidence, the case was a "close call." We cannot conclude beyond a reasonable doubt that the admission of the blood evidence did not contribute to appellant's conviction. Consequently, we must reverse appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Hernandez*, 60 S.W.3d at 108.

Appellant's first and second issues, as set forth in his supplemental briefs, are sustained. As such, we need not address appellant's other points of error. *See* Tᴇx. R. Aᴘᴘ. P. 47.1.

## IV.    Cᴏɴᴄʟᴜsɪᴏɴ

We reverse appellant's conviction and remand the cause to the trial court for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Delivered and filed the
13th day of November, 2014.

18