PD-0857-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/16/2015 9:00:06 AM
Accepted 3/16/2015 9:26:10 AM
ABEL ACOSTA
CLERK

**No. PD-0857-14**
**IN THE COURT OF CRIMINAL APPEALS**
**OF TEXAS**

_____

**NO. 14-12-00642-CR**
**IN THE COURT OF APPEALS**
**FOURTEENTH JUDICIAL DISTRICT OF TEXAS**
**HOUSTON, TEXAS**

_____

**THE STATE OF TEXAS**
**Appellant**

**vs.**

**KENNETH LEE DOUDS**
**Appellee**

_____

# NOTICE OF ADDITIONAL AUTHORITY

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW, THE STATE OF TEXAS, Appellant in the above cause, and files this Notice of Additional Authorities. This notice is to inform the Court of Criminal Appeals of the following cases for their consideration in the above cause set for submission on Oral Argument on March 18, 2015 at 9:00 A.M. Both of these cases held that the defendant failed to preserve error under circumstances similar to the instant case:

**Cases:**

*Lyssy v. State,* 01-12-00898-CR, 2014 WL 714924 (Tex. App. – Houston [1st Dist.] Feb 6, 2014, *no pet.*)(not designated for publication);

1

*Kay v. State,* 01-13-00595-CR, 2014 WL 3697917 (Tex. App. – Houston [1st

Dist.] July 24, 2014, *no pet.*)(not designated for publication).


Respectfully submitted,


/S/ DAVID BOSSERMAN
David Bosserman
Assistant Criminal District Attorney
SBN 0267520
111 East Locust, Suite 408A
Angleton, Texas 77515
(979) 864-1232
Fax (979) 864-1525

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this State's Notice of Additional Authority was served by E-service on Charles D. Adams, attorney for Appellee, in compliance with Rule 9.5 of the Rules of Appellate Procedure. A copy was also served by E-service on the State Prosecuting Attorney in compliance with Rule 68.11 of the Rules of Appellate Procedure. E-service was completed on this the 16th day of March, 2015.

| | |
|---|---|
| Charles D. Adams | Lisa C. McMinn |
| Attorney for Appellee-Defendant | State Prosecuting Attorney |
| 7930 Broadway, Suite 106 | P.O. Box 13046 |
| Pearland, Texas 77581 | Austin, Texas 78711 |
| Bar No. 24026760 | Bar No. 13803300 |
| Email: cda@cdadamslaw.com | Email: Lisa.McMinn@spa.texas.gov |

429 S.W.3d 37
Court of Appeals of Texas,
Houston [1st Dist.].

Michael Joe LYSSY, Appellant

v.

The STATE of Texas, Appellee.

No. 01–12–00898–CR.   |   Feb. 6, 2014.

**Synopsis**

**Background:** After his motion to suppress evidence was denied, defendant entered nolo contendere plea in the County Court at Law No. 2, Galveston County, Barbara Roberts, J., to driving while intoxicated (DWI). Defendant appealed.

**Holdings:** The Court of Appeals, Michael Massengale, J., held that:

[1] defendant waived for appellate review issue as to constitutionality of taking blood under DWI statute, and

[2] dispatcher's notice of two prior DWI convictions was reliable so as to require taking of breath or blood sample.

Affirmed.

Evelyn V. Keyes, J., issued dissenting opinion.

West Headnotes (11)

**[1]** **Criminal Law**

 Sufficiency and Scope of Motion

110  Criminal Law
110XXIV   Review
110XXIV(E)   Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1   In General
110k1044   Motion Presenting Objection
110k1044.2   Sufficiency and Scope of Motion
110k1044.2(1)   In general
Defendant waived for appellate review issue as to constitutionality of taking blood under statute requiring law enforcement officers to take breath or blood samples from a suspect arrested for driving while intoxicated (DWI) when the officer has reliable information from a credible source that the suspect has two prior DWI convictions, where defendant's motion to suppress, as it developed at the hearing, demonstrated that his challenge at trial was based solely on a failure to observe the statute's terms, not an attack on the constitutionality of what it authorized. Rules App.Proc., Rule 33.1(a); V.T.C.A., Transportation Code § 724.012(b).

2 Cases that cite this headnote

**[2]** **Criminal Law**

 Adding to or changing grounds of objection

110  Criminal Law
110XXIV   Review
110XXIV(E)   Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1   In General
110k1043   Scope and Effect of Objection
110k1043(3)   Adding to or changing grounds of objection
To preserve the issue for appellate review, the appellant's issue must correspond with the objection he made at trial. Rules App.Proc., Rule 33.1(a).

1 Cases that cite this headnote

**[3]** **Criminal Law**

 Adding to or changing grounds of objection

110  Criminal Law
110XXIV   Review
110XXIV(E)   Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1   In General
110k1043   Scope and Effect of Objection
110k1043(3)   Adding to or changing grounds of objection
An objection stating one legal theory may not be used to support a different legal theory on appeal; this is true even if the alleged error implicates constitutional guaranties. Rules App.Proc., Rule 33.1(a).

1 Cases that cite this headnote

**[4]** **Criminal Law**

Necessity of specific objection

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1043 Scope and Effect of Objection
110k1043(2) Necessity of specific objection
The purpose of requiring a specific objection
in the trial court is twofold: (1) to inform the
trial judge of the basis of the objection and give
him the opportunity to rule on it; (2) to give
opposing counsel the opportunity to respond to
the complaint. Rules App.Proc., Rule 33.1(a).

Cases that cite this headnote

**[5]** **Criminal Law**

Necessity of specific objection

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1043 Scope and Effect of Objection
110k1043(2) Necessity of specific objection
A party must be specific enough so as to let the
trial judge know what he wants, why he thinks
himself entitled to it, and do so clearly enough for
the judge to understand him at a time when the
trial court is in a proper position to do something
about it. Rules App.Proc., Rule 33.1(a).

Cases that cite this headnote

**[6]** **Criminal Law**

Scope and Effect of Objection

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1043 Scope and Effect of Objection
110k1043(1) In general
To decide whether a general complaint was
sufficient to preserve error for appellate review,
context must be considered. Rules App.Proc.,
Rule 33.1(a).

Cases that cite this headnote

**[7]** **Criminal Law**

Necessity of specific objection

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1043 Scope and Effect of Objection
110k1043(2) Necessity of specific objection
When the correct ground for exclusion was
obvious to the judge and opposing counsel, no
forfeiture results from a general or imprecise
objection; on the other hand, when the
context shows that a party failed to effectively
communicate his argument, then the error will be
deemed forfeited on appeal.

Cases that cite this headnote

**[8]** **Criminal Law**

Scope and Effect of Objection

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1043 Scope and Effect of Objection
110k1043(1) In general
A complaint that could, in isolation, be read
to express more than one legal argument will
generally not preserve all potentially relevant
arguments for appeal. Rules App.Proc., Rule
33.1(a).

Cases that cite this headnote

**[9]** **Automobiles**

Grounds or cause; necessity for arrest

48A Automobiles
48AIX Evidence of Sobriety Tests
48Ak417 Grounds for Test
48Ak419 Grounds or cause; necessity for arrest
When police officer heard from his dispatcher
that defendant had been convicted of "DWI
Second Conviction," officer possessed reliable
information from a credible source that

defendant had been convicted twice of driving while intoxicated (DWI), thus requiring officer to take breath or blood sample from defendant; while the information communicated to officer could have been characterized as being incomplete insofar as the dispatcher did not also mention a first conviction for DWI, officer was not required to further investigate the information he received before being entitled to rely on it in the field. V.T.C.A., Transportation Code § 724.012(b).

1 Cases that cite this headnote

**[10]    Criminal Law**
👈 Review De Novo

**Criminal Law**
👈 Evidence wrongfully obtained

110   Criminal Law
110XXIV   Review
110XXIV(L)   Scope of Review in General
110XXIV(L)13   Review De Novo
110k1139   In general
110   Criminal Law
110XXIV   Review
110XXIV(O)   Questions of Fact and Findings
110k1158.8   Evidence
110k1158.12   Evidence wrongfully obtained

A trial court's decision on a motion to suppress is reviewed using a bifurcated standard of review; while the appellate court shows almost total deference to the trial court's determinations of historical fact, the appellate court reviews the trial court's application of the law of search and seizure to the facts de novo. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

**[11]    Criminal Law**
👈 Theory and Grounds of Decision in Lower Court

110   Criminal Law
110XXIV   Review
110XXIV(L)   Scope of Review in General
110XXIV(L)5   Theory and Grounds of Decision in Lower Court
110k1134.60   In general

Ultimately, the appellate court will sustain the trial court's ruling on a motion to suppress evidence if its ruling is reasonably supported by the record and is correct on any theory of law applicable to the case.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*38**  Tad Nelson, Amber Spurlock, Tad Nelson & Associates, League City, TX, for Appellant.

Jack Roady, District Attorney, Rebecca Klaren, Assistant District Attorney, Galveston County, Galveston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

**OPINION**

MICHAEL MASSENGALE, Justice.

**\*\*1**  This appeal concerns a Texas statute which requires a law enforcement officer to take a blood sample from a suspect arrested for driving while intoxicated when the officer has reliable information from a credible source that the suspect has two prior convictions for driving while intoxicated. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (West 2011). Appellant Michael Joe Lyssy was charged by information with the misdemeanor offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). Lyssy moved to suppress evidence of a blood draw taken the night of his arrest. He argued that the report of his criminal history on which the officer relied was not reliable or credible because it listed a conviction for "driving while intoxicated 2nd" but no prior DWI conviction. The trial court denied this motion. After the trial court denied his motion to suppress, Lyssy entered a plea of nolo contendere and was convicted of driving while intoxicated.

In his sole appellate issue, Lyssy argues that the trial court erred by denying his motion to suppress. We affirm.

**Background**

Officer Gavino Rivas of the League City Police Department stopped Lyssy for failing to maintain a single lane of traffic. **\*39** Rivas performed a field sobriety test. He also asked Lyssy to blow into a breathalyzer, but was refused. He then arrested Lyssy.

Rivas called League City dispatch and asked for a report on Lyssy from two databases, the Texas Crime Information Center and the National Crime Information Center (TCIC/ NCIC). Rivas provided Lyssy's license plate number and his driver's license number to query. The resulting report listed multiple event cycles, including an arrest nearly seven years earlier, which the database reported resulted in a guilty plea and conviction for the class A misdemeanor offense of "driving while intoxicated 2nd." No other DWI conviction was included in the report.

Dispatch orally reported its findings to Rivas over the radio. In Rivas's words, "The results came back that Mr. Lyssy's license was suspended, that he had prior convictions for driving while license suspended, and he had ... a conviction for DWI second conviction." Rivas testified that he did not remember hearing anything about a first offense for DWI.

Based upon this information and the mandatory blood-draw statute (Transportation Code chapter 724), Rivas requested a sample of Lyssy's blood without obtaining a warrant. Lyssy refused. Rivas transported him to the hospital where one of its employees extracted a blood specimen.

At the subsequent hearing on Lyssy's motion to suppress the evidence resulting from the blood draw, Rivas testified, "From the information I have now ... he did not have two convictions." He also testified that on the night of the arrest, he relied on the TCIC/NCIC report to conclude that Lyssy "did have two prior convictions for driving while intoxicated," and at the time he had no reason to doubt that information from the report.

**\*\*2** The TCIC database is maintained by the Texas Department of Public Safety. Both TCIC and NCIC are updated "24/7." Each participating law enforcement agency inputs its own information on arrests. It is the responsibility of each agency to check the information it inputs for accuracy. As Rivas described TCIC/NCIC:

> It's ... the database of all criminal histories, both within Texas and nationally. It's administered by the individual law enforcement agencies. For League City, we place everything there, from stolen vehicles, missing children, warrants, things like that; and we're responsible for administering our portion of the database.

Rivas was asked how often he relies on information from TCIC/NCIC. He replied, "any incident, any contact with a potential subject, we rely on the returns given by our dispatch via TCIC/NCIC." He testified that he has found information from TCIC/NCIC to be credible and reliable in the past. When questioned whether he had ever had a problems with the accuracy of information from the databases, he answered, "On a general basis, no, sir." The trial court denied the motion to suppress.

Pursuant to a plea bargain, Lyssy pleaded nolo contendere and was sentenced by the trial court to 365 days in jail, in addition to a $300 fine. The court suspended this sentence and imposed a twenty-four month term of community supervision. The trial court certified his right to appeal its decision on the motion to suppress.

**Analysis**

In his appellate brief, Lyssy offers two reasons why the blood evidence should have been suppressed. His first reason is that the statute relied upon by the State to justify the blood draw, TEX. TRANSP. **\*40** CODE ANN. § 724.012(b), is no longer a legitimate basis for search in light of *Missouri v. McNeely,* ––– U.S. ––––, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). His second reason is that the statute itself was not satisfied because the officer lacked reliable information that Lyssy had two prior convictions for driving while intoxicated, as would require a blood draw under the statute.

The relevant portion of the Transportation Code reads as follows:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses

the officer's request to submit to the taking of a specimen voluntarily:

...

> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

...

> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [Driving While Intoxicated], 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

> **\*\*3** (c) The peace officer shall designate the type of specimen to be taken.

TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B), (c). When a person is arrested under the circumstances described in section 724.012(b), that person's refusal to submit to the taking of the specimen does not suspend the officer's statutory duty to take it. *Id.* § 724.013.

## I. Waiver of constitutional challenge to section 724.012(b)

 **[1]** In his brief, Lyssy asserts that extraction of blood pursuant to section 724.012(b) is unconstitutional given the Supreme Court's decision in *McNeely.* However, Lyssy did not argue before the trial court that blood extraction pursuant to section 724.012(b) was unconstitutional. Lyssy's argument at the hearing on his motion to suppress was directed solely at whether the statutory predicates for a blood draw were satisfied. RR 37–43. At no point during the hearing did he attack the legitimacy of the statute as a basis for taking blood in the absence of a warrant.

 **[2]** **[3]** In order for a defendant to preserve his complaint for appellate review, he must present to the trial court a timely objection, request, or motion stating the specific grounds for the ruling he wishes. TEX.R.APP. P. 33.1(a). An appellant's issue must correspond with the objection he made at trial. *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995). " 'An objection stating one legal theory may not be used to support a different legal theory on appeal.' " *Id.* (quoting *Johnson v. State,* 803 S.W.2d 272, 292

(Tex.Crim.App.1990)). This is true even if the alleged error implicates constitutional guaranties. *Id.*

 **[4]** **[5]** "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State,* 306 S.W.3d 308, 312 (Tex.Crim.App.2009). "[A] party must be specific enough so as to 'let the trial judge know what he wants, why he thinks himself entitled to it, and do so **\*41** clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.' " *Id.* at 313.

 **[6]** **[7]** To decide whether a general complaint was sufficient to preserve error, context must be considered. *Id.* "When the correct ground for exclusion was obvious to the judge and opposing counsel, no forfeiture results from a general or imprecise objection." *Id.* On the other hand, "when the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal." *Id.*

The arguments and evidence at the hearing were narrowly focused on whether the information requirements of section 724.012(b)(3) were satisfied. The constitutionality of a search pursuant to the statute was not called into doubt. Looking to Lyssy's written motion to suppress, he likewise did not specifically challenge the constitutionality of blood draws made under the statute's authority. CR 17–20. Although he did complain that the search was warrantless and conducted in the absence of exigent circumstances, he did so in a general form:

> **\*\*4** The warrantless stop and search of the Defendant and the automobile and Defendants' personal property and the interrogation of Defendant by the police were void and illegal because they were *conducted in the absence of exigent circumstances* to stop the vehicle which Defendant was driving and search him and the vehicle.

(Emphasis supplied.) Considered in context, we conclude that this language was not sufficient to inform the trial court and opposing counsel of a challenge to the validity of searches under section 724.012(b). *See id.* at 312; *cf. Buchanan v. State,* 207 S.W.3d 772, 777 (Tex.Crim.App.2006) ( "[T]rial counsel's allusions to 'consent' and 'exigent circumstances'

do not necessarily or exclusively refer to Chapter 14, so as to make it 'obvious' that the appellant was raising it in addition to his purely constitutional claims.").

 **[8]** It is true that Lyssy's appellate objection to the constitutionality of the search hinges on his claim that exigent circumstances were absent. Still, this is not sufficient to interpret Lyssy's written motion to suppress as a challenge to the constitutionality of searches pursuant to the statute. This is because "a complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal." *Resendez,* 306 S.W.3d at 314. As the Court of Criminal Appeals has held, "Only when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved." *Id.* The context of the motion to suppress, as it developed at the hearing, demonstrates that Lyssy's challenge was based solely on a failure to observe the statute's terms, not an attack on the constitutionality of what it authorizes. *See id.* We conclude that Lyssy forfeited his objection to the constitutionality of taking blood under section 724.012(b). *See id.* at 316–17. As such, we assume, without deciding, the constitutionality of section 724.012(b) for purposes of this appeal. [1]

1  The dissent declares *McNeely* to be "inapplicable" on the merits. This is an unresolved issue. *See, e.g., Aviles v. Texas,* ——U.S. ——, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014) (order vacating judgment and remanding case for reconsideration in light of *McNeely* ).

## II. Reliability of information to justify blood draw

 **[9]** **[10]** **[11]** Lyssy's second argument is that even if section 724.012(b) is a constitutional **\*42** basis for a warrantless search, "the blood draw must still be excluded because the information received by Officer Rivas had an error on its face making it internally inconsistent and unreliable." We review a trial court's decision on a motion to suppress using a bifurcated standard of review. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App.2010). While we show "almost total deference" to the trial court's determinations of historical fact, we review its application of the law of search and seizure to the facts de novo. *Id.* Since the trial judge in this case did not make express findings of fact, we will imply "the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *State v. Kelly,* 204 S.W.3d 808, 819 (Tex.Crim.App.2006). Ultimately, "[w]e will sustain the trial

court's ruling if its ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.' " *Valtierra,* at 447–48 (quoting *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006)).

 **\*\*5** The Transportation Code establishes that *motor vehicle operators who are arrested for DWI offenses* are deemed to have consented, subject to the remainder of the chapter, "to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance." TEX. TRANSP. CODE ANN. § 724.011(a). [2] Separate from the concept of implied consent by drivers arrested on suspicion of DWI, the statute also *requires* an officer to take a breath or blood specimen when "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person ... on two or more occasions, has been previously convicted of or placed on community supervision for [driving while intoxicated] ...."*Id.*§ 724.012(b)(3). [3]

2  The dissent misreads the statute when it alleges that our holding "vitiates" the implied consent statute. As noted above, the consent that is "deemed" by the statute is triggered *by the arrest for the DWI offense,* and that deemed consent is not conditioned on two prior DWI convictions. *See*TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011). The statute anticipates that despite this deemed consent, a person nevertheless may refuse the request of a peace officer to submit to the taking of a specimen. In that event, certain consequences result, including license suspension and confiscation. *See, e.g., id.* § 724.032.

3  The officer's possession or receipt of "reliable information from a credible source that the person ... on two or more occasions, has been previously convicted of or placed on community supervision for [driving while intoxicated],"*id.*§ 724.012(b)(3), is therefore significant not as a precondition for deemed consent, as suggested by the dissent, but instead because it is one of the conditions under which a peace officer "shall require" the taking of the specimen, even in the face of the person's refusal to submit voluntarily. *Id.*§ 724.012(b). Accordingly, the dissent's suggestion that the court holds "that an officer's subjective belief that an implied consent statute has been satisfied is sufficient to imply consent" completely misconstrues both the operation of the statute and our application of it, and we disavow that mischaracterization of our holding.

Lyssy does not challenge the credibility of TCIC/NCIC as a source of information or the credibility of the League City Police Department dispatcher as a conduit of TCIC/NCIC information to an officer in the field. What he does challenge is the reliability of the information Rivas received from the dispatcher: he asserts that it contained an error that made it internally inconsistent. Specifically, Rivas was told that Lyssy had a conviction for "DWI Second Conviction," but he was not specifically informed of any other convictions **\*43** for driving while intoxicated. Lyssy thus argues that the information Rivas received was patently inconsistent and therefore unreliable.

Rivas testified that he relies on TCIC/NCIC for "any contact with a potential subject," that he has found information from the database to be credible and reliable, and that "on a general basis," he has had no problems with the accuracy of the database. Any discrepancy inferred from the bare fact that Rivas was informed of a "DWI Second Conviction" but not a first conviction for driving while intoxicated did not necessarily render the information Rivas received from his dispatcher unreliable.

In *Comperry v. State,* an officer arrested the defendant for driving while intoxicated and took him to jail. 375 S.W.3d 508, 510 (Tex.App.-Houston [14th Dist.] 2012, no pet.). Once there, the officer obtained a TCIC printout for the defendant. *Id.* The report listed two convictions for driving while intoxicated, one in Harris County and one in Galveston County. *Id.* In reality, the defendant had only been convicted once of DWI. *Id.* at 511. The event cycle for the Galveston County matter recited that the defendant had been arrested for DWI. *Id.* at 510. It then listed two convictions—one for obstructing a highway and one for DWI—but the defendant actually had been convicted only of obstructing a highway. *Id.* The defendant further argued that the information contained in the TCIC report contained "facial irregularities" because the convictions were "the result of the same plea on the same date, in the same court, and under the same cause number." *Id.* at 516–17. The defendant argued that the irregularities should have alerted the officer and spurred an investigation of the underlying facts. *Id.* Despite the trial court's finding that the information was "confusing and possibly incorrect in the way it [was] displayed,"*id.* at 511, the court of appeals rejected the defendant's position. *See id.* at 517. It reasoned that the TCIC record "plainly reflected" multiple convictions for driving while intoxicated and that an officer need not "so closely examine a TCIC report before being entitled to rely on it." *Id.*

**\*\*6** In the present case, Rivas was told by the dispatcher that Lyssy had a conviction for "DWI Second Conviction." As in *Comperry,* this information implied multiple convictions for driving while intoxicated. *See id.* While the information communicated to Rivas could be characterized as being incomplete insofar as the dispatcher did not also mention a first conviction for DWI, Rivas did not have to further investigate the information he received "before being entitled to rely on it" in the field. *See id.; see also State v. Terrazas,* 406 S.W.3d 689, 694 (Tex.App.-El Paso 2013, no pet.) ("[L]aw enforcement investigating or confirming criminal history is not a requirement under [the blood draw statute]."). [4]

4    Like the court in *State v. Flores,* 392 S.W.3d 229 (Tex.App.-San Antonio 2012, pet. ref'd), "we do not mean to suggest that information contained in the NCIC/TCIC is per se reliable." *Id.* at 237. Nothing in our opinion should be taken to suggest the impropriety of a challenge to reliance on such information given an appropriate record. *See id.* ("[A] trial court must make the finding of reliability of the information based on the specific evidence presented.").

Later, with the benefit of additional information obtained by the time of the hearing on the motion to suppress, Rivas testified that the report contained an error. But nothing contained in the information received from TCIC/NCIC or in the information communicated by the dispatcher to Rivas rose to the level of a **\*44** glaring contradiction that would undermine the general reliability of the information coming from a source that has not been challenged on the basis of its credibility. The trial court therefore reasonably could have concluded that the report's inclusion of a conviction specifically identified as "driving while intoxicated 2nd" was not rendered facially unreliable simply because the report did not also separately identify the preceding DWI conviction.

We conclude that the record supports the conclusion that when Rivas heard from his dispatcher that Lyssy had been convicted of "DWI Second Conviction," he possessed reliable information from a credible source that Lyssy had been convicted twice of driving while intoxicated. *See Terrazas,* 406 S.W.3d at 694; *State v. Flores,* 392 S.W.3d 229, 238 (Tex.App.-San Antonio 2012, pet. ref'd); *Comperry,* 375 S.W.3d at 518. We therefore overrule Lyssy's issue.

**Conclusion**

We affirm the judgment of the trial court.

KEYES, J., dissenting.

EVELYN V. KEYES, Justice, dissenting.

**\*\*6** I respectfully dissent. Appellant Michael Joe Lyssy pleaded nolo contendere to the misdemeanor offense of driving while intoxicated ("DWI") pursuant to a plea bargain and the trial court sentenced him to 365 days in jail and imposed a $300 fine.[1] The court suspended this sentence and imposed a twenty-four month term of community supervision. Lyssy appeals the trial court's denial of his motion to suppress evidence of a blood draw taken the night of his arrest on the ground that he did not consent to the warrantless blood draw upon which he was convicted and that his constitutional rights were thereby violated. I agree. I would reverse and remand for a new trial.

1     *See* TEX. PENAL CODE ANN. § 49.04 (West Supp.2011).

**Background**

Officer G. Rivas of the League City Police Department stopped Lyssy for failing to maintain a single lane of traffic. Officer Rivas performed a field sobriety test. He also asked Lyssy to blow into a breathalyzer, but Lyssy refused. Officer Rivas then arrested Lyssy. Officer Rivas called League City dispatch and requested a report on Lyssy from two databases, the Texas Crime Information Center and the National Crime Information Center ("TCIC/NCIC"). The resulting report showed that Lyssy had been convicted in 2004 for the offense of "driving while intoxicated 2nd." No other DWI conviction was included in the report.

**\*\*7** Officer Rivas testified that he understood from dispatch's oral report that Lyssy "had ... a conviction for DWI second conviction." However, he also testified that he did not remember hearing anything about a driving while intoxicated, first offense. Based on his understanding of the TCIC/NCIC report, he requested a sample of Lyssy's blood without obtaining a warrant. Lyssy refused. Rivas transported him to a hospital, and one of its employees extracted a blood specimen.

At the subsequent hearing on Lyssy's motion to suppress the evidence resulting from the blood draw, it became clear that Lyssy had only one previous DWI conviction and that the TCIC/NCIC report had labeled his 2004 DWI conviction as "driving while intoxicated 2nd." Officer Rivas testified that, although he relied on the TCIC/NCIC report to conclude that Lyssy had two prior DWI convictions at the time **\*45** of his arrest for the current offense, he understood "[f]rom the information [he has] now" that Lyssy did not have two convictions.

**Analysis**

Lyssy argues that the blood evidence should have been suppressed because (1) the statute relied upon by the State to justify the blood draw, Texas Transportation Code section 724.012(b), is no longer a legitimate basis for search in light *of Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) and (2) the conditions for implying consent to draw blood without a warrant under section 724.012(b) itself were not satisfied and, therefore, the blood draw violated his constitutional rights. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3) (West 2011).

The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). A warrantless search or seizure is per se unreasonable unless it falls under a recognized exception to a warrant. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim.App.2000). One such exception is a search conducted pursuant to consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). The Court of Criminal Appeals has stated that "[t]he implied consent law does just that —it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search." *Beeman v. State,* 86 S.W.3d 613, 615 (Tex.Crim.App.2002). The court held,

> The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives

officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.

*Id.* at 616.

Both the United States Supreme Court and the Court of Criminal Appeals have recognized a two-part analysis for determining the legality of a blood draw: reviewing courts must determine (1) whether the police were justified in requiring the defendant to submit to a blood test and (2) whether the means and procedures employed in taking the blood respected the relevant Fourth Amendment standards of reasonableness. *See State v. Johnston,* 336 S.W.3d 649, 658 (Tex.Crim.App.2011) (citing *Schmerber,* 384 U.S. at 768, 86 S.Ct. at 1834).

**\*\*8** Appellant argues that the United States Supreme Court's recent holding in *Missouri v. McNeely* invalidates his blood draw. I disagree. In *McNeely,* the Supreme Court clarified the meaning of "exigency" in the context of a warrantless blood draw, holding that the natural metabolization of alcohol in the bloodstream, without more, does not constitute exigent circumstances; rather, "exigency" must be determined case-by-case based on the totality of the circumstances. 133 S.Ct. at 1560, 1568. Nothing in that opinion invalidated Texas's implied consent statute. In fact, in Section III of *McNeely,* Justice Sotomayor, writing for a four-justice plurality, implicitly characterized implied consent statutes, including a specific reference to section 724.012(b), as collateral to the exigency concerns underlying the issue before the Supreme Court. *Id.* at 1566–67 & n. 9. Thus, I conclude that *McNeely* is inapplicable to the current case, which involved the application of Texas's implied **\*46** consent statute, and it does not render that statute unconstitutional.

Texas's implied consent statute, Transportation Code section 724.012(b)(3)(B), provides that "[a] peace officer shall require the taking of a specimen of the person's breath or blood ... if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ... and the person refuses the officer's request to submit to the taking of a specimen voluntarily" if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person *...on two or more occasions, has been previously convicted of ... an offense* under Section 49.04 [the DWI statute], 49.05,

49.06, or 49.065, Penal Code...."TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (emphasis added). Section 724.013 provides, "Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." *Id.* § 724.013 (West 2011).

Here, Officer Rivas received information from a reliable source relating Lyssy's prior DWI history, as required by section 724.012(b)(3)(B)—but that dispatch report listed only *one* prior DWI conviction. The officer's explanation for his ordering the blood drawn—that he believed from the report that Lyssy actually had two previous DWI convictions—does not alter the fact that the statutory conditions for implying Lyssy's consent to the blood draw were not met. Indeed, the majority's holding—that an officer's subjective belief that an implied consent statute has been satisfied is sufficient to imply consent—vitiates both the implied consent statute and the underlying constitutional concept of implied consent to a warrantless search. Under the majority's reading of the statute, consent to a warrantless search is implied whenever an officer believes in good faith that he has complied with the law in ordering a search. Neither the implied consent statute nor the constitutional Fourth Amendment restrictions on searches and seizures would have any meaning if the beliefs of police officers were their own warrant for the validity of a search of a person or place or the seizure of a blood specimen regardless of the facts.

**\*\*9** I would hold that the subjective beliefs of an officer do not satisfy the objective requirements of the implied consent statute. The implied consent statute required that Officer Rivas have reliable information from a credible source that Lyssy had at least two prior DWI convictions, but Lyssy had only one previous conviction—Officer Rivas's misunderstanding of the report notwithstanding. The fact that the report labeled Lyssy's single previous conviction as "driving while intoxicated 2nd" might make Officer Rivas's belief at the time he subjected Lyssy to the blood draw reasonable, but it does not alter the material facts—the report listed only one previous DWI conviction, and Lyssy, in fact, had only one prior DWI conviction. Section 724.012(b)(3)(B), by its plain language, does not imply consent when a suspect has only one previous DWI conviction. Therefore, in the absence of a search warrant or actual consent, the blood evidence here is not admissible.

I would hold that because the statutory conditions for implying Lyssy's consent to the search were not satisfied,

the evidence of the warrantless blood draw should have been suppressed.

"If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the **\*47** conviction or punishment." TEX.R.APP. P. 44.2. I cannot conclude beyond a reasonable doubt that the results of a warrantless blood test taken without consent—actual or implied—and showing a blood alcohol level that supported a conviction for DWI did not contribute to Lyssy's conviction.

I would therefore sustain Lyssy's point of error.

### Conclusion

For the foregoing reasons, I would reverse the judgment of the trial court and remand for a new trial.

### Parallel Citations

2014 WL 714924 (Tex.App.-Hous. (1 Dist.))

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Declined to Follow by** Leal v. State, Tex.App.-Hous. (14 Dist.), November 13, 2014

2014 WL 3697917
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do Not Publish. TEX. R. APP. P. 47.2(b).**
Court of Appeals of Texas,
Houston (1st Dist.).

Milton Wayne KAY, Appellant
v.
The STATE of Texas, Appellee.

No. 01–13–00595–CR. | July 24, 2014.

On Appeal from the 260th District Court, Orange County, Texas, Trial Court Case No. D–120519–R.

**Attorneys and Law Firms**

Charles Sexton, for Milton Wayne Kay.

Cory Andrew Kneeland, for The State of Texas.

Panel consists of Chief Justice RADACK and Justices MASSENGALE and HUDDLE.

**MEMORANDUM OPINION**

REBECA HUDDLE, Justice.

**\*1** Appellant Milton Wayne Kay was charged by indictment for felony driving while intoxicated ("DWI").*See*TEX. PENAL CODE ANN. § 49.04 (West Supp.2013). The indictment further alleged an enhancement for two prior driving while intoxicated convictions, in 1989 and 2000. Kay moved to quash the indictment, arguing that his prior DWI convictions could not be used to enhance his DWI charge to a felony because they were over ten years old, and the trial court denied his motion. Kay also moved to suppress the warrantless blood draw and video recording, both of which were taken on the night of his arrest, and the trial court denied his motion.

A jury found Kay guilty and sentenced him to 19 years' confinement in prison. In two issues, Kay (1) challenges the constitutionality of section 724.012 of the Texas Transportation Code, which requires a law enforcement officer to take a blood sample from a suspect arrested for driving while intoxicated when the suspect has refused to submit to the blood draw voluntarily and the officer has reliable information from a credible source that the suspect has two prior convictions for driving while intoxicated, and (2) argues that he was denied effective assistance of counsel. We affirm.

**Background**

On June 3, 2012, Officer P. McDonald [1] of the Orange Police Department stopped Kay for not wearing his seatbelt and for having an expired vehicle registration sticker. While conducting the traffic stop, Officer McDonald smelled alcohol and observed Kay slurring his speech. Officer McDonald conducted field sobriety tests, and indicated that Kay was intoxicated, and then placed Kay under arrest and transported him to the Orange County Jail.

[1] Officer McDonald testified at the hearing on Kay's motion to suppress and at trial.

At the jail, Kay refused to submit to a blood draw voluntarily. However, when Officer McDonald had earlier placed Kay in custody, dispatch had provided Kay's criminal history report to Officer McDonald. The report showed that Kay had two prior DWI convictions. Relying on section 724.012(b) of the Transportation Code, Officer McDonald directed a nurse at the jail to perform a warrantless blood draw on Kay. The results indicated that Kay had a blood alcohol concentration of .24 grams of ethanol per 100 milliliters of blood, which was three times the legal limit.

Kay moved to suppress the blood alcohol test's results because the blood was taken without his consent and without a warrant. At the hearing on Kay's motion to suppress, Officer McDonald testified that he ordered the blood draw because he had a good faith belief that Kay had two previous DWI convictions. The basis for his belief was Kay's criminal history report, given to him by dispatch, which indicated Kay had two prior DWI convictions. The trial court denied the motion, explaining: "[B]ased upon the fact that the statute in the state of Texas does allow for the non-warrant blood draw if ... the defendant has two prior convictions for DWI, which

has been admitted and stipulated here, the Court is going to deny the Motion to Suppress as to the blood draw without a warrant."It later denied Kay's motion for new trial, which raised the same issue, along with two issues regarding jury instructions.

**\*2** After Kay filed his notice of appeal, his trial counsel moved to withdraw. The appeal was abated and the trial court held a hearing at which it granted the request to withdraw and appointed new appellate counsel. During the same hearing, the trial court also heard testimony from Kay and his trial counsel regarding Kay's contention that trial counsel rendered ineffective assistance by failing to convey a plea offer to Kay.

### Transportation Code Section 724.012

Citing *Missouri v. McNeely,* 133 S.Ct. 1552 (2013), Kay contends that section 724.012 of the Texas Transportation Code is unconstitutional because it "impermissibly narrows [Kay's] Constitutionally guaranteed right to be free from unreasonable searches of his person and seizure of his bodily fluids without a warrant and without any showing of exigent circumstances."

### A. Applicable Law

The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834 (1966). A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967); *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim.App.2000). One such exception is a search conducted pursuant to consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44 (1973). Likewise, implied consent law "implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search."*Beeman v. State,* 86 S.W.3d 613, 615 (Tex.Crim.App.2002).

Section 724.012(b)(3)(B) of the Texas Transportation Code provides implied consent to draw blood without a warrant in limited circumstance. It states: "[a] peace officer shall require the taking of a specimen of the person's breath or blood ... if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ...

and the person refuses the officer's request to submit to the taking of a specimen voluntarily" if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person ... on two or more occasions, has been previously convicted of ... an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code."TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). Driving while intoxicated is an offense under section 49.04 of the Penal Code. *See*TEX. PENAL CODE ANN. § 49.04. When a person is arrested under the circumstances described in section 724.012(b), that person's refusal to submit to the taking of the specimen does not suspend the officer's statutory duty to take it. *Id.* § 724.013 (West 2011).

### B. Analysis

Relying on *McNeely,* Kay contends that section 724.012 violates the Fourth Amendment. But Kay did not challenge the constitutionality of section 724.012 in the trial court. Rather, Kay's argument in his motion to suppress and at the hearing on that motion was that (1) the blood draw was warrantless and taken over his refusal to voluntarily provide a blood sample and (2) Kay's two prior convictions were too remote in time to serve as the two prior convictions required by section 724.012(b). At no point did Kay attack the constitutionality of section 724.012(b).

**\*3** At the hearing on Kay's motion to suppress, Kay's counsel focused on the fact that Kay "did not agree for his blood to be taken," and that the State had the burden to show there were circumstances present that allowed the State to take a warrantless blood draw.[2] Counsel argued that

2     The State agreed it had the burden and would lay the foundation at trial to prove that Kay had two prior convictions which allowed for the warrantless blood draw.

there may be exceptions where you don't have to get a warrant under [*McNeely* ]; but the State does have the burden of proof to carry that issue ... [to show] what circumstances they don't have to get a warrant, and we have agreed on the record no warrant was issued in this case ... Kay did not agree for his blood to be taken....

Counsel also argued that Kay's two prior DWI convictions could not satisfy the statute because they were each more than ten years old. Counsel did not argue that section 724.012, the implied-consent statute, is unconstitutional under *McNeely* or otherwise.[3]

3    For its part, he State argued at the hearing that *McNeely* "specifically seems to endorse" the constitutionality of the implied-consent statute.

Kay's written motion to suppress likewise did not challenge the constitutionality of blood draws taken under the authority of section 724.012(b). Although Kay complained in his motion to suppress that the warrantless taking of his blood violated the United States and Texas Constitutions, he did so only generally:

> [E]vidence in this case has been illegally obtained ...*in violation of* the United States Constitution, the Texas Constitution, and Texas Statutory Laws ... [T]he blood specimen was extracted from [Kay] *without his permission and without a search warrant.*Generally, tak[ing] of a blood sample is a search and seizure within the meaning of the Fourth Amendment to the United States Constitution ... Article I, section 9 of the Texas Constitution requires that a search warrant be issued ... In addition, Article 38.23 of the Texas Code of Criminal Procedure forbids any evidence obtained in violation of the law to be admitted against an accused....

(Emphasis added). (Citations omitted).

Considered in context, we conclude that Kay's complaint to the trial court was not sufficient to inform the trial court that Kay challenged the constitutionality of section 724.012(b).*See Resendez v. State,* 306 S.W.3d 308, 314 (Tex.Crim.App.2009) (holding that "[o]nly when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved"). The record demonstrates that Kay's motion to suppress, as it was developed at the hearing, was based solely on the fact that the blood was drawn over his objection and without a warrant. Kay's counsel seemingly ignored section 724.012 at the hearing; thus, even considering context, nothing in the record suggests that Kay alerted the trial court that he sought to challenge the constitutionality of the implied-consent statute authorizing Kay's blood draw. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995) (holding that an "objection stating one legal theory may

not be used to support a different legal theory on appeal," even when asserting a constitutional challenge). Accordingly, we hold that Kay's challenge to the constitutionality of section 724.012(b) was not preserved for our review. *See*TEX.R.APP. P. 33.1; *see also Lyssy v. State,* 429 S.W.3d 37, 41 (Tex.App.-Houston [1st Dist.] 2014, no pet.)(holding that appellant waived his constitutional challenge to section 724.012(b) where "[t]he context of the motion to suppress, as it developed at the hearing, demonstrates that [appellant's] challenge was based solely on a failure to observe the statute's terms, not an attack on the constitutionality of what it authorizes.").

**\*4** We overrule Kay's first issue.

### Ineffective Assistance of Counsel

In his second issue, Kay contends that his trial counsel rendered ineffective assistance by failing to inform Kay of a plea offer. Kay contends this warrants reversal and reinstatement of the State's plea offer.

#### A. Standard of Review and Applicable Law

Both the federal and state constitutions guarantee an accused the right to have the assistance of counsel. *See*U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 1.051 (West Supp.2013). The right to counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063 (1984); *Ex parte Gonzales,* 945 S.W.2d 830, 835 (Tex.Crim.App.1997). Both state and federal claims of ineffective assistance of counsel are evaluated under the two prong analysis of *Strickland. Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999).

The first prong requires the appellant to demonstrate that counsel's performance was deficient, meaning that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The second prong requires the appellant to show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the appellant must prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App.1998). Unless an appellant can prove

both prongs, an appellate court must not find counsel's representation to be ineffective. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson,* 9 S.W.3d at 813; *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim .App.1994). On direct appeal, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective-assistance claim because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial. *Mata v. State,* 226 S.W.3d 425, 430 (Tex.Crim.App.2007). The lack of a clear record usually will prevent the appellant from meeting the first prong of *Strickland,* as the reasonableness of counsel's choices and actions during trial can be proven deficient only through facts that do not normally appear in the appellate record. *Id.* In order for an appellate court to find on direct appeal that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez v. State,* 343 S.W.3d 137, 142 (Tex.Crim.App.2011). When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *Stults v. State,* 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). An appellate court will not speculate about the reasons underlying defense counsel's decisions to find counsel ineffective. *Id.;Jackson,* 877 S.W.2d at 771.

**B. Analysis**

 **\*5**  Kay filed a motion for new trial, but it did not raise an ineffective assistance claim. On appeal, he contends that the State offered a plea bargain of seven years in prison and that his trial counsel failed to communicate that offer to Kay. Kay further contends that his trial counsel failed to intelligently assess and communicate the offer because counsel misunderstood the law. Specifically, Kay argues that his trial counsel erroneously believed that the State was prohibited from using Kay's two prior DWI convictions as predicates for a felony DWI charge because they were more than ten years old.

We abated this appeal and ordered the trial court to hold a hearing on Kay's trial counsel's motion to withdraw. On the same day that the trial court held a hearing on and granted the motion to withdraw, it heard testimony from Kay to the effect that no plea offer was communicated to him but that he had since been informed that there may have been a plea offer at some point. [4]

[4]  There is a supplemental reporter's record of a "hearing to present additional evidence," which the trial court held after Kay was appointed new appellate counsel.

The trial court did not have authority to hold an evidentiary hearing regarding Kay's ineffective assistance claim because our order of abatement did not provide for such a hearing. *See*TEX.R.APP. P. 25.2(g) ("Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate."). Even when an appeal is abated, "[a] trial court is not authorized to conduct an evidentiary hearing to develop a record of *new testimony* and *other evidence* that was not presented at trial, or developed on motion for new trial."*Lewis v. State,* 711 S.W .2d 41, 43–44 (Tex.Crim.App.1986) (emphasis in original) (holding that trial court "exceeded her authority under the mandate of abatement" by holding evidentiary hearing to develop evidence on ineffective assistance claim because appellant failed to present such evidence at trial or in motion for new trial). Accordingly, we do not consider the testimony from the evidentiary hearing that was held while the case was abated. Disregarding the evidence adduced at that hearing, the record does not affirmatively show that any plea offer actually was extended by the State or that Kay's trial counsel failed to convey an offer to him. *See Lopez,* 343 S.W.3d at 142 (stating that the record must affirmatively demonstrate the alleged ineffectiveness to find ineffective counsel). Thus, we cannot conclude that Kay has established that his trial counsel's representation fell below an objective standard of reasonableness. *See Jenkins v. State,* No. 01–03–00185–CR, 2004 WL 1233996, at \*7 (Tex.App.-Houston [1st Dist.] June 3, 2004, no pet.)(mem. op., not designated for publication) (holding appellant failed to show his counsel's performance was deficient because there was no record that appellant's counsel failed to inform him of plea offer or that State ever proposed plea bargain). Accordingly, we hold that Kay failed to meet the first prong of *Strickland.*

 **\*6**  We overrule Kay's second issue.

### Conclusion

We affirm the trial court's judgment.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.